TOWNSEND v. STICK.

No. 5524.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1946.

George Rountree, Jr., of Wilmington, N. C., and John H. Bocock, of Richmond, Va. (Rountree & Rountree, of Wilmington, N. C., William H. King, John W. Pearsall, and McGuire, Eggleston, Bocock & Woods, all of Richmond, Va., on the brief), for appellant.

John B. McMullan and John H. Hall, both of Elizabeth City, N. C., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This appeal is taken by defendant, W. J. Townsend, from a judgment in favor of Frank Stick, entered by the United States District Court for the Eastern District of North Carolina, ordering specific performance of what was found to be a binding contract to convey certain realty.

The sole question raised by this appeal is whether as a matter of law the admitted facts established the existence of a valid and enforceable contract between the parties. The lower court so found and, after a careful examination of the record, we are convinced of the correctness of that holding.

Briefly, the facts are as follows: Townsend, who was in the marine transportation business at Bayonne, New Jersey, was the owner of a tract of ocean-front land in Dare County, North Carolina, containing 2,700 acres, more or less. This one tract was his only real estate holding in that county. On May 11, 1945, Frank Stick, of Kill Devil Hills, North Carolina, wrote the Townsend Transportation Company (the name under which Townsend did business), inquiring whether Townsend was interested in selling this tract to an unnamed client of Stick at any price in the neighborhood of $30,000. To this, Townsend's secretary, Miss L. E. Myers, replied that he was not interested in selling at that time. About a month later, Stick wrote again, suggesting a cash deal for $30,000, with a waiver of all or most of the oil and mineral rights. This letter was apparently written on the basis of a rumor that Townsend had changed his mind; it still indicated that Stick was acting for an unnamed client.

Townsend, through his secretary, replied to this suggestion by letter dated June 18, 1945, in the following words:

"Townsend Transportation Company
Bayonne, New Jersey
June 18, 1945.
Dare County Construction Company
Kill Devil Hills, N. C.

Gentlemen: Attention: Frank Stick

Receipt is acknowledged of your letter of June 5, relative to the possible sale of property owned by W. J. Townsend in Dare County.

Since our last letter to you Captain Townsend has decided that if you are interested in this tract, with all gas, oil, and mineral rights retained exclusively by him, he will sell the tract for thirty thousand dollars ($30,000.00) cash, on immediate sale.

Yours very truly,
s/ L. E. MYERS
for W. J. Townsend."

It was stipulated by the parties that Miss Myers was Townsend's agent in writing this letter and that she acted on his behalf.

Stick's reply, dated June 21, 1945, was as follows:

"Captain W. J. Townsend
P. O. Box 392
Bayonne, N. J.

Dear Sir:

This letter will acknowledge receipt of your communication of June 18th, 1945, ac-

cepting our offer of $30,000.00 for your 2700 acre tract of beach land in Dare County.

My associates and myself are prepared to close immediately at the price quoted, $30,000.00, and while search of title is being made by Mr. P. W. McMullen, of Elizabeth City, we are ready to make a substantial down payment, either on a contract or on an option, in accordance with your wishes, in order to establish our good faith in the matter.

If you desire the entire amount of the purchase price will be placed in escrow, pending establishing of the title to the property.

Please advise just how you want the matter handled.

Yours very truly,
s/ Frank Stick"

At the trial of this case, Townsend testified that he never received this letter or a subsequent one, written by Stick on June 28, 1945, though he did receive several letters, similarly addressed, written on subsequent dates. However, the District Judge found as a fact that all the letters were duly received by Townsend, either "personally or through his duly authorized agent or agents." From the record taken as a whole, we are unable to say that this finding was without foundation.

In any event, Townsend replied neither to this letter nor to four subsequent ones, nor to a telegram, all sent him by Stick within the next eight weeks. These subsequent letters sought information with respect to the correct legal description of the property, explained the delay in closing, occasioned by the sudden death of the attorney searching the title, suggested deferment by Townsend of the negotiation of oil leases on the property, and asked for information as to how payment should be made. Specifically, Stick offered to execute a purchase contract or make an earnest payment, as alternatives to his first proposal to pay the entire purchase price into escrow.

The District Judge ruled that the two letters quoted above constituted a binding contract with which Townsend had refused to comply and of which Stick was then entitled to specific performance. Judgment was entered accordingly and Townsend has taken this appeal.

Appellant contends that these conclusions are improper since he had made no offer capable of acceptance, that material terms essential to an enforceable contract had not been agreed upon, and that there was a lack of mutuality in the parties bound, as matters stood.

■ The first of these arguments we are unable to accept as consonant with the obvious meaning of Townsend's letter of June 18. It is difficult to see how a much plainer offer could be made than by the statement "—if you are interested in this tract,—he will sell the tract for thirty thousand dollars ($30,000.00) cash, on immediate sale." No question is raised as to the identity of the property at issue, while the price, time and nature of the payment are all set forth. There is nothing in the wording of his letter to justify the interpretation asked by appellant, that it be construed merely as a listing of the property with a real estate agent.

■■ If the status of this letter as an offer is conceded, appellant argues that Stick's reply was only a counteroffer and not an acceptance in terms of the proposal contained in Townsend's letter. In support of this contention, reference is made to the proposed title search by a specified attorney and to the offer of a variety of methods of making payment, none of them construed by appellant as the equivalent of "cash, on immediate sale." But this was not a case of acceptance of defendant's offer contingent on the approval of the title by an attorney of plaintiff's choice. Here, all that was suggested was an examination of title to determine its merchantability, and it is uniformly conceded that it is implied in a contract to convey land, unless differently agreed, that the vendor will give a marketable title.

It is stated in Richardson v. Greensboro Warehouse & Storage Co., 223 N.C. 344, 26 S.E.2d 897, 899, 149 A.L.R. 201: " * * * it is implied in a contract to convey land, unless differently agreed, that the seller must give a good title."

49 Am.Jur., Specific Performance, Section 95: "It is generally implied, in the absence of an express provision in the con-

tract to a different effect, that the vendor in a contract for the sale of real estate will convey a good title, which is generally defined as a marketable title * * *."

55 Am.Jur., Vendor and Purchaser, Section 149: "An agreement to sell and convey land is in legal effect an agreement to sell a title to the land, and, in the absence of any provision in the contract indicating the character of the title provided for, the law implies an undertaking on the part of the vendor to make and convey a good or marketable title to the purchaser."

The facts here are clearly distinguishable from those of Richardson v. Greensboro Warehouse and Storage Co., 223 N.C. 344, 26 S.E.2d 897, 149 A.L.R. 201, relied upon by appellant. There what was sought to be construed as an acceptance was not only "subject to the approval of the title by our attorneys", but an express stipulation was made that if these particular attorneys failed to approve the title, the earnest money would be returned and the entire transaction called off. In the case before us no such requirement was made and Townsend, in a subsequent letter, was invited to submit any abstract of title he might have as a means of hastening the closing. All in all, it seems clear that Stick intended to accept Townsend's offer without modification of any material element of that offer. For example, his letter stated: "My associates and myself are prepared to close immediately at the price quoted * * *." The proposals of alternative methods of paying the purchase price seem to relate solely to the performance of the contract and not to its creation.

If these contentions fail, appellant falls back on yet a third line of defense, namely, that essential elements of such a contract were still under negotiation. These elements are outlined by the appellant in the following terms: "(a) The Nature of the Final Agreement; (b) The Manner of Reserving Oil and Mineral Rights; (c) The Purchase Price; (d) The Time, Place and Amount of Payment; (e) The Time Allowable for a Survey, a Title Examination and Removal of Title Defects; (f) The Quantity of Land to be Sold; (g) The Character of the Title to be Guaranteed; and (h) The Identity of the Purchaser."

We have examined these contentions closely and are convinced that they are either matters of performance rather than matters involved in the formation of the contract, or that they are substantially covered by the contract or would be implied by law. The letters, however informal, contain, we think, all the essentials of a valid contract. It should be noted that Stick has raised no question concerning any of these items and offered to accept the situation under terms most favorable to Townsend.

As a final suggestion, appellant states that the course of subsequent correspondence between the parties indicates that Stick did not intend to be bound until a formal contract was executed and further that there is no showing that he intended to be a principal in the transaction at all. These subsequent actions, instead of manifesting any such intent, show, we think, that Stick very clearly considered that he and Townsend were bound by the agreement reached through these two letters, and they indicate an eagerness on his part to proceed promptly with the performance of this contract. Townsend's inexplicable silence, in spite of these activities of Stick, is, too, a factor that cannot be altogether disregarded.

The testimony of Kaufman, an impartial witness, is also not without importance. Kaufman testified that when he met Townsend with the idea of securing oil rights in the land, Townsend stated to Kaufman: "He (Townsend) told me (Kaufman) that he (Townsend) had a deal with Frank Stick, representing Frank Stick and others, I don't know who, for the purchase of that property." (Italics ours.) Kaufman further testified that Townsend mentioned $30,000 as the price. Townsend denied these statements to Kaufman but the District Court found that Townsend had made these statements to Kaufman.

Finally, Stick bound himself by his letter of acceptance, whether or not any one else was bound with him.

In 6 R.C.L. 609, Contracts § 32, it is stated: "From the rule that the acceptance must be unconditional it must not be inferred that the mere mention in a letter of

acceptance of matters upon which the acceptance of the proposition does not depend prevents the contract from being completed."

And in Richardson v. Greensboro Warehouse & Storage Co., 223 N.C. 344, 26 S. E.2d 897, 898, 149 A.L.R. 201, it was said: "Where the contract, as here, is in several writings—as offer and acceptance—and not contained in a single document which both parties have executed, the Court will not, of course, be astute to detect immaterial differences in the phrasing of offer and acceptance which might defeat the contract, but will try to give to each writing a reasonable interpretation under which substantial justice may be reached according to the intent of the parties." See, also, Crotts v. Thomas, 226 N.C. 385, 38 S.E. 2d 158.

We, therefore, conclude that the decision of the District Court was correct and must be affirmed.

Affirmed.