## HOFFSTOT v. DICKINSON et al.
### No. 5679.

Circuit Court of Appeals, Fourth Circuit.

Feb. 19, 1948.

John B. Gordon, of Pittsburgh, Pa., and Robert W. Lawson, Jr., of Charleston, W. Va. (Steptoe & Johnson, of Charleston, W. Va., and Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., on the brief), for appellant.

Charles C. Wise and Hillis Townsend, both of Charleston, W. Va. (John V. Ray, J. Hunter McClintic, Payne, Minor & Ray, Townsend & Townsend, and Campbell, McClintic & James, all of Charleston, W.Va., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment and decree for defendants in a suit for specific performance of an alleged contract for the conveyance of coal lands, or in the alternative to recover damages for breach of the contract. Plaintiff is one J. G. Hoffstot, a coal operator. Defendants are John L. Dickinson, J. N. Berthy, Jr. and T. J. Blair, owners of certain coal lands in Nicholas County, West Virginia, the wives of these defendants, and the Muddlety Coal Land Company, a corporation the entire stock of which they had owned and which had conveyed to them title to the lands in controversy. The trial judge dismissed the suit on the ground that a contract for the conveyance of the property had not been established, since the minds of the parties had never met on the terms of any definite agreement to convey. See Hoffstot v. Dickinson, D.C., 71 F.Supp. 897. The facts may be summarized as follows:

On August 7, 1943, defendant Blair, acting in behalf of the corporation, which owned the land in controversy at that time, wrote a letter to plaintiff pricing at $100 per acre "the land needed for operations and the coal", and stating "this includes the lower and upper seams, which have been opened and which you have seen, and a third seam above the two that has not been prospected but may exist". It was stated in the letter that, if a lease rather than a purchase was desired, this could be arranged at twelve cents per ton, and that if plaintiff was interested in either proposal, he might advise Blair, who would present the matter to the board of directors of the corporation for approval. In the year following this letter, a few letters were exchanged between the parties relative to the property, but no definite action was taken.

On September 13, 1944, plaintiff expressed a willingness to purchase the property and obtained permission of defendants to prospect it by core drilling and otherwise. He then proceeded, in accordance with the permission thus obtained, to make extensive tests at considerable cost and thus satisfied himself that the property had coal deposits that he would be willing to purchase. He met defendants on December 7, 1944, and notified them that he was ready to buy the coal that he had tested; but defendants would not agree to sell at that time. They stated that the corporation could not make a sale then; that for tax reasons it was being dissolved and its property conveyed to its three stockholders; and that, after this had been accomplished and title vested in the defendants, they would give consideration to the question of making a sale to plaintiff of the property which he desired to purchase. The corporation conveyed its land to defendants on December 26, 1944, and three days later was duly dissolved.

On June 22, 1945, Blair sent plaintiff a map of the property asking him to advise what land he wished to purchase and on July 6th mailed him form of a proposed deed conveying all coal in the Tioga seam and above that was embraced in a tract of land described as containing 207 acres. Plaintiff refused to accept this conveyance, contending that he was entitled to all the coal on the property above the level of Muddlety Creek at $100 per acre and to the surface land on Laurel Fork at no additional compensation. At a meeting with defendants on August 1, 1945, he insisted on these contentions, whereupon defendant

Dickinson stated that he had never heard of the proposal to convey the coal above the level of Muddlety Creek and was unwilling to convey the surface land on Laurel Fork. No agreement was reached at this meeting; and on August 14th, Blair sent plaintiff another form of deed which he rejected. A third form of deed was likewise rejected. On November 26, 1945, Blair met plaintiff at Summersville, where plaintiff insisted that he be conveyed the surface land on Laurel Fork; and, on February 18, 1946, Blair prepared and sent to him a form of deed conveying the coal within the boundary in question and also the surface land on Laurel, but making a number of reservations, which were important to defendants as the owners of adjoining lands. The plaintiff in his brief in this court says that this deed and the accompanying letter "culminate the correspondence and may be considered as the contract or memorandum which takes the case out of the statute of frauds".

Plaintiff did not, however, accept the offer evidenced by this letter and deed. On the contrary, he wrote Blair on March 26th that he had not taken the deed up "as yet" because he desired to take up with his attorney at the same time another matter for which he was negotiating with defendants; and on April 6th he wrote that it was essential that he have sufficient land for a railroad siding and that provision for this must be made in the deed. On May 8, 1946, he wrote Blair a letter showing that he had not accepted the offer evidenced by the deed and letter, saying "No doubt, when and if the two sales go through, you will want to use this map to attach to the deed."

On May 27, 1946, plaintiff came to Blair's office and tendered him, as the form of conveyance that he was willing to accept, a deed which was different in a number of particulars from the deed tendered by Blair. Defendants in the meantime had decided that it was important to reserve certain rights over the surface lands on Laurel; and they thereupon notified plaintiff that they rejected the offer to deal on the basis of the deed which plaintiff had tendered, and that the only basis upon which they would then deal was the deed offered by Blair with an additional reservation of a right of way over the surface on Laurel for the transportation of coal from their adjoining lands. The parties immediately went into a lengthy discussion of this reservation, but did not agree upon it. Next day, plaintiff delivered to defendants a letter in which he purported formally to accept the Blair deed of February 26th. Defendants refused to comply with the demand in this letter, but on July 11, 1946, tendered plaintiff a deed similar to the one tendered by Blair on February 26th, except that it contained the additional reservation upon which they had decided to insist.

As pointed out by the learned judge below in his opinion, the forms of deed tendered by Blair on February 26th and by Hoffstot on May 27th differed from each other in the following particulars:

"1. The Blair deed conveyed all the land above 2005 feet elevation; the Hoffstot deed conveyed all above 2000 feet elevation.

"2. The Hoffstot deed gave plaintiff extensive rights over the adjoining land of the grantors; the Blair deed gave no rights of any kind in the adjoining land.

"3. The Blair deed reserved fee simple title to all land below 2005 feet; the Hoffstot deed omitted any such reservation. This is an immaterial variation, inasmuch as the conveyance of land above the named elevation would necessarily exclude land below that point.

"4. The Blair deed reserved to the grantors mining rights in the surface, which were to be used so as not to *unreasonably* interfere, with grantee's mining operations; the Hoffstot deed provided that such rights should be exercised so as not to interfere with the full use and possession of the land by the grantee.

"5. The Hoffstot deed provided for payment of .12c a ton for any coal required to be left in the land as a result of the exercise by the grantors of any of the rights reserved, and that the grantors should pay all taxes on any part of the surface used by them; which provisions are not included in the Blair deed."

We agree with the trial judge that, on these facts, there was no meeting of the minds of the parties on any definite agree-

ment. There were a number of conferences and much correspondence; but there was never any definitive proposal by one side to which the other side agreed. The complaint was drawn and the case tried in the court below on the theory that it was the offer contained in the Blair deed of February 18, 1946, which ripened into a contract by acceptance; but, faced with the decision of the lower court that the tender of the Hoffstot deed with different conditions amounted to a rejection of the Blair deed and authorized the withdrawal of the offer therein contained, defendants take the position here that a binding contract was entered into prior to the tendering of the Blair deed and that the proposals of forms of deeds on both sides were merely attempts to carry out a contract already validly made and binding upon the parties.

■ It is well settled, of course, that, if the minds of the parties have met on the essential elements of a contract, the binding agreement thus formed is not invalidated by subsequent negotiations regarding the details of performance or requests for modification of terms agreed upon. See Townsend v. Stick, 4 Cir., 158 F.2d 142. That principle has no application here, however, for the reason that the minds of the parties never met upon what was one of the most essential features of any proposed contract, viz., what was to be conveyed. It is clear that they were bargaining for the sale and purchase of coal lands belonging to defendants south of Muddlety Creek and east of Laurel Fork; but it is equally clear that their minds never met on such essential terms of the contract as the surface lands to be conveyed with the coal or the rights to be retained by defendants with respect to the lands conveyed, and that, because of disagreement over these matters, the deal was not consummated. The evidence shows that finally the defendants were willing to convey the coal land to plaintiff at the agreed price per acre but only if rights over the surface lands in Laurel Fork were reserved to them, and that plaintiff was willing to accept the conveyance of the land, but not with this reservation. Because their minds never met on this essential matter, the negotiations fell through.

■ Blair's letter of August 7, 1943, upon which plaintiff relies together with his notification of December 7, 1944 as constituting the contract, did not pretend to cover this matter of conflicting surface rights. It was a mere pricing of the coal lands and an invitation to plaintiff to submit an offer to be passed upon by the directors. Nothing was added to this by the permission given plaintiff to prospect on the land, even though the prospecting was done by plaintiff at considerable expense. Plaintiff's notice to defendants on December 7, 1944, that he was ready to purchase the lands that he had prospected certainly did not conclude a contract; for not only was no definite agreement made at that time, but it appears also that plaintiff was notified that defendants were dissolving the corporation for tax purposes and refused to discuss a sale until they could put that matter behind them. To say that there was a contract of sale entered into at that time, with conveyance deferred for purposes of tax evasion, would not only be contrary to the evidence in the case, but would place the parties in the position of perpetrating a fraud on the tax laws which would preclude a recovery by plaintiff under the doctrine that he who comes into equity must come with clean hands. See Pomeroy Equity Jurisprudence 4th ed. sec. 400; Mas v. Coca-Cola Co., 4 Cir., 163 F.2d 505.

■ Not until July 6, 1945, did defendants make a definite proposal in writing to convey to plaintiff the coal which he wished to purchase. This proposal he refused to accept because the deed tendered did not convey the surface rights that he desired. Two other deeds tendered plaintiff were likewise rejected. Finally, after conferring with plaintiff and ascertaining exactly what surface rights it was that plaintiff wished, Blair tendered the deed of February 18, 1946, which conveyed surface rights up Laurel Fork, but in connection therewith reserved certain other rights respecting the lands conveyed. It is this deed that plaintiff relies on to take the case out of the statute of frauds; but of course the limitations and reservations contained therein cannot be disregarded. Plaintiff could have accepted it or rejected it; but he could not accept it as embodying an offer and reject the lim-

itations and reservations upon which the offer was made.

 As stated above, plaintiff did not accept the offer embodied in the Blair deed until after it had been withdrawn. Not until May 27, 1946, did he take any action about the matter; and the action then taken was to tender another form of deed as embodying what he was willing to accept. We have pointed out the differences between the two instruments. It will not do to say that the differences were trifling or immaterial. They appear to be quite substantial; and certainly plaintiff thought so, or he would not have made them the subject of a counter offer. The tender by plaintiff of a deed containing different reservations as embodying what he was willing to accept was unquestionably a counter offer which, on elementary principles, amounted to a rejection of the offer embodied in the deed tendered by Blair. Bowers Co. v. Kanawha Valley Products Co., 100 W. Va. 278, 130 S.E. 284; Iselin v. United States, 271 U.S. 136, 46 S.Ct. 458, 70 L.Ed. 872; A.L.I. Restatement of Contracts sec. 38. Plaintiff contends that he accepted the Blair deed and merely suggested certain immaterial changes in it; but the evidence as well as the finding of the lower court is to the contrary. The tender of another deed was not the act of one accepting the deed tendered and merely suggesting that changes be made as a matter of grace.

Even if the tender of the deed by plaintiff be not treated as a rejection of the offer submitted in the Blair deed, it certainly was not an acceptance and defendants had the right to withdraw the offer at any time before acceptance. This they did when, in declining to execute the deed tendered by plaintiff, they stated that they would convey only if rights were reserved to them over the surface lands on Laurel Fork. This reservation became the subject of prolonged negotiation, and only after there was failure to agree on it did plaintiff write the letter endeavoring to accept the offer contained in the Blair deed. It was then too late to do so. Bowers Co. v. Kanawha Valley Products Co., supra; Weaver v. Burr, 31 W.Va. 736, 8 S.E. 743, 3 L.R. A. 94.

Assuming as contended by plaintiff that Blair was the agent of his codefendants, it is clear that no binding contract was concluded between the parties. The law applicable is the elementary law of contracts and is too well settled to justify extended discussion or citation of authorities. The judgment and decree appealed from will be affirmed.

Affirmed.