JOHN A. BURKHEAD v. LESTER M. FARLOW AND WIFE, DOROTHY FARLOW.

(Filed 2 March, 1966.)

**1. Vendor and Purchaser § 1—**

Where an option to purchase is not under seal and is not supported by a valuable consideration, it may be withdrawn at any time before, but not subsequent to, unconditional acceptance.

**2. Same; Frauds, Statute of § 6b—**

A verbal acceptance of an option is binding on the vendor, although it would not repel the statute of frauds as to the purchaser.

**3. Vendor and Purchaser § 1—**

In the absence of agreement to the contrary the law implies an obligation on the part of the vendor to furnish a marketable title, and therefore acceptance of an option upon tender of a marketable title, as distinguished from a title satisfactory to the purchaser or his attorney, is an unconditional acceptance, and an acceptance of an option depending upon "title examination" implies acceptance if the title is ascertained to be marketable, and therefore is an unconditional acceptance.

**4. Vendor and Purchaser § 2—**

A written option to purchase, good to a specified time, was not under seal or supported by consideration. Plaintiff accepted the option, depending upon "title examination." Before examination of title was completed, but within the period limited, defendants advised plaintiff they would not sell. *Held:* Plaintiff's acceptance of the offer within the time limited was unconditional and defendants had no right thereafter to withdraw the option.

**5. Same—**

Where vendors state that they withdraw their option and refuse to execute deed, tender of purchase price by the purchaser is not required.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Latham, S.J.,* May 10, 1965 Civil Session of RANDOLPH, docketed in the Supreme Court as Case No. 613 and argued at the Fall Term 1965.

Action for specific performance of an alleged contract to convey real estate. It is alleged and admitted in the pleadings that defendants are seized in fee simple as tenants by the entireties of a tract of land consisting of approximately 52 acres located in Back Creek Township, Randolph County, fronting approximately 500 feet on Spero Road. The property is described by metes and bounds in paragraph III of the complaint.

Plaintiff's evidence tends to show: On or about August 15, 1961, defendants told plaintiff that they owned the 52-acre tract of land in question, and Mrs. Farlow said to plaintiff, "Why don't you buy it?" Two days later, he offered defendants $15,000.00 for this property "if they wanted to sign a contract and agreement at that time." Assenting, defendants signed the following document, which had been prepared by plaintiff:

### "Option of Purchase

"We do here-by option to John A. Burkhead, a certain parcel or tract of land, lying & being in Back Creek Township, Randolph County and described as follows: App. 52 acres of land with 500 ft. more or less fronting the Spero Rd. The purchase ~~11,000.00~~ 15,000.00, payable upon delivery of deed and acceptance of Title.

"Option expires Oct. 15, 1961.

HIS—Lester M. Farlow
HER—Dorothy Farlow."

After the above memorandum was signed, plaintiff asked defendants for the deed to the property so that he could "put it in the hands of an attorney for a title check." When they gave him the deed, he told them it would be two or three weeks before the title examination could be completed, and that when it was, "the money would be available for them." Plaintiff testified: "My acceptance of this title depended on the title examination of this property." Approximately two weeks after defendants signed the instrument set out above, Mrs. Farlow telephoned plaintiff that she and her husband had decided not to sell the property. Plaintiff told her that they

had signed a binding contract which he expected them to perform. Her reply was, "We are not going to sell." At the time of this conversation, the title examination had not been completed. It was completed thereafter, and the title is acceptable to plaintiff.

At the close of plaintiff's evidence, the court allowed defendants' motion for judgment of nonsuit. Plaintiff appeals.

*John Randolph Ingram for plaintiff appellant.*
*Miller & Beck and Coltrane & Gavin for defendant appellees.*

SHARP, J. The informal "Option of Purchase" signed by defendants, the parties sought to be charged in this action, embodies the terms of the offer of sale and the names of the vendor and vendee. The adequacy of the description of the land to be conveyed is not in question here, for defendants admit in their further answer that on August 15, 1961, they executed an option to plaintiff to purchase the lands described in the complaint. See *Lane v. Coe,* 262 N.C. 8, 136 S.E. 2d 269; *Gilbert v. Wright,* 195 N.C. 165, 141 S.E. 577; *Norton v. Smith,* 179 N.C. 553, 103 S.E. 14. This case, therefore, involves no questions pertaining to the statute of frauds, G.S. 22-2.

The option in suit is not under seal, and it was without consideration. It was a mere offer to sell which defendants might have withdrawn at any time before acceptance. "(W)ithout a valuable consideration to support it the agreement would be a mere *nudum pactum,* and might have been withdrawn *at any* time. . . . But after unconditional acceptance there is a valuable consideration to support the contract . . ." *Timber Co. v. Wilson,* 151 N.C. 154, 156, 65 S.E. 932, 933. See *Thomason v. Bescher,* 176 N.C. 622, 97 S.E. 654. For a resume of the rules applicable to options in North Carolina, see Christopher, *Options to Purchase Real Property in North Carolina,* 44 N.C. L. Rev. 63 (1965).

Plaintiff's evidence, which must be taken as true in considering the motion for nonsuit, tends to show that at the time defendants delivered the option to plaintiff, he orally agreed to buy the property and told defendants the money would be available as soon as the title examination had been completed. "A written option offering to sell, at the election of the optionee, can become binding on the owner by verbal notice to the owner. . . ." *Warner v. W & O, Inc.,* 263 N.C. 37, 42, 138 S.E. 2d 782, 786. *Accord, Kottler v. Martin,* 241 N.C. 369, 85 S.E. 2d 314. A parol acceptance, of course, would not repel the statute of frauds and thus could not have bound the optionee.

Plaintiff's notice of acceptance was given to defendant-optionors approximately two months before the option expired, and defendants' purported repudiation occurred about two weeks after receipt of this notice. The question which this appeal presents is whether plaintiff unconditionally accepted the offer contained in the option. Defendants contend that plaintiff's acceptance was conditional in that it was made to depend upon the title examination which had not been completed at the time defendants withdrew their offer.

It is uniformly held that to consummate a valid contract an acceptance must be unconditional and must not change, add to, or qualify the terms of the offer. *Carver v. Britt,* 241 N.C. 538, 85 S.E. 2d 888. It is also the general rule that the optionee's insertion in his acceptance of a condition which merely expresses that which "would be implied in fact or in law by the offer does not preclude the consummation of the contract, since such a condition involves no qualification of the acceptor's assent to the terms of the offer." Annot., Land Sale—Offer and Acceptance—Variance, 149 A.L.R. 205, 211 (1944).

In any contract to convey land, unless the parties agree differently, the law implies an undertaking on the part of the vendor to convey a good or marketable title to the purchaser. *Richardson v. Storage Co.,* 223 N.C. 344, 26 S.E. 2d 897, 149 A.L.R. 201; *Leach v. Johnson,* 114 N.C. 87, 19 S.E. 239; *Townsend v. Stick,* 158 F. 2d 142; Annot., Marketable Title, 57 A.L.R. 1253, 1268 (1928); 55 Am. Jur., Vendor & Purchaser § 149 (1946). A marketable title is one "free from reasonable doubt in law or fact as to its validity." *Pack v. Newman,* 232 N.C. 397, 400, 61 S.E. 2d 90, 92. It "must be one which can be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence." 55 Am. Jur., *op. cit. supra* § 149; 92 C.J.S., Vendor & Purchaser § 191 (1955). See Annot., 57 A.L.R., *supra* at 1282-85.

Since, in the absence of an agreement to the contrary, merchantability is implied in a contract to convey land, "the acceptance of an offer to sell land making no specifications or limitations as to title is not made conditional by including a provision requiring "marketable title." 1 Corbin, Contracts § 86 (2d Ed. 1963). Cases supporting this proposition are collected in Annot., 149 A.L.R., *supra* at 211-213 and in 1 Williston, Contracts § 78 (3d Ed. 1957), wherein it is stated:

> "Sometimes an acceptor from abundance of caution inserts a condition in his acceptance which merely expresses what would be implied in fact or in law from the offer. As such a condition involves no qualification of the acceptor's assent to

the terms of the offer, a contract is not precluded. Thus an offer to sell land may be accepted subject to the condition that the title is good, for unless the offer expressly specifies that the offeree must take his chance as to the validity of the title, the meaning of the offer is that a good title will be conveyed."

To like effect, see illustration No. 2 to Restatement, Contracts § 60 comment *a* (1932).

Although the law implies an obligation on the part of the vendor to furnish a good or marketable title, it does not imply any obligation to furnish a title that will be satisfactory to the vendee or his attorney, or one that he will be willing to accept. The fact that the title is not satisfactory to a particular purchaser or his attorney does not necessarily mean that the title is, in fact, not marketable. 55 Am. Jur., *op. cit. supra* § 150. Therefore, an acceptance of an offer to sell land which provides that the title must be satisfactory to the buyer's attorney is a conditional acceptance; it imposes as a condition of the sale the approval of his own lawyer as distinguished from the standard established by the law. *Richardson v. Storage Co., supra. Cf. Carver v. Britt, supra;* 1 Williston, Contracts § 77 (3d Ed. 1957); Annot., 149 A.L.R., *supra* at 208-210.

The narrow question confronting us is whether the terms of plaintiff's acceptance—that when the title examination was completed the money would be available—specified any requirement other than a good or marketable title.

It goes without saying that plaintiff had a right to secure a lawyer's opinion as to the quality of the title. No prudent person would buy land without first having the title examined by a qualified title attorney. In order to give a title opinion, an abstractor must make a careful, and sometimes time-consuming, search of the public records. As Parker, J. (now C.J.) said in *Carver v. Britt, supra* at 541, 85 S.E. 2d at 891, "The looking up of a title, the drafting and execution of a deed, the time and place of payment of the purchase price are customary details in working out a real estate conveyance."

In *Richardson v. Storage Co., supra,* plaintiff not only made his acceptance of defendant's title dependent upon the approval of specified attorneys; he expressly stipulated that if these particular attorneys did not approve the title his earnest money would be returned and the transaction terminated. Plaintiff here imposed no such condition, nor did he require that the title be "satisfactory" to any particular individual or his agent "before the money would be available." For a collection of the cases discussing this latter and troublesome requirement, see Annot., Land Sale—"Satisfactory"

Title, 47 A.L.R. 2d 455 (1956). All that plaintiff required in this case was "a title check." From these words we can imply only that plaintiff would accept the title if it were ascertained to be merchantable. Of course, it will always be the attorney selected by the vendee who first gives him a title opinion. Should the abstractor's opinion be adverse, unless it has been so stipulated in the contract, his opinion is not binding upon the vendor. In a situation where the *vendor* seeks specific performance and the vendee defends on the ground that vendor's title is not good, marketability becomes a question for the court. *City of North Mankato v. Carlstrom,* 212 Minn. 32, 2 N.W. 2d 130. See 92 C.J.S., *op. cit. supra* § 191.

This case is closely analogous to *Townsend v. Stick, supra.* There, Stick (vendee) notified Townsend that he accepted his offer to sell land at the price quoted and offered to place the money in escrow "pending establishment of the title to the property." Townsend resisted specific performance on the ground that Stick had not accepted his offer unconditionally. The court held that Stick's acceptance did not modify the offer. It said, "(A)ll that was suggested was an examination of title to determine its merchantability, and it is uniformly conceded that it is implied in a contract to convey land, unless differently agreed, that the vendor will give a marketable title." *Id.* at 144. Specific performance was decreed.

We hold that, upon this record, plaintiff's acceptance of the offer contained in the "Option of Purchase" was unconditional. The option did not require payment or tender of the purchase price until defendants delivered a deed to plaintiff. The defendants having attempted to revoke the offer after acceptance and having refused to execute a deed, no tender was required of plaintiff. *Trust Co. v. Frazelle,* 226 N.C. 724, 40 S.E. 2d 367.

The judgment of nonsuit is
Reversed.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.