MARRIOTT FINANCIAL SERVICES, INC. v. CAPITOL FUNDS, INC.
AND LAWYERS TITLE INSURANCE CORPORATION

No. 7410SC546

(Filed 6 November 1974)

1. **Cancellation and Rescission of Instruments § 4— unilateral mistake of law — validity of contract**

   The trial court erred in concluding that no legally valid contract for the sale of land was formed between the parties because the sale was closed under a mutual mistake of fact where the evidence disclosed that the purchaser acted under a mistake of law, unilateral to it and neither participated in nor induced by the seller, in believing that a city traffic engineer had authority to issue a driveway permit for the subject property and that the engineer had issued such a permit to the purchaser.

2. **Deeds § 7; Municipal Corporations § 30; Vendor and Purchaser § 3— subdivision control ordinance — sale of land by reference to unapproved plat — misdemeanor — validity of deed**

   Enabling statute and city ordinance making it a misdemeanor to describe land in any contract of sale, deed, or other instrument of transfer by reference to a subdivision plat that has not been properly approved and recorded does not render void or voidable a contract for the sale of land on the ground that the seller did not obtain city council approval of a subdivision plat as required by the ordinance.

3. **Cancellation and Rescission of Instruments § 2— cancellation for fraud — absence of representations**

   Sale of land was not subject to rescission on the ground of fraud because the seller had not obtained city council approval of a plat and the purchaser was unable to obtain a driveway permit where there was no evidence that the seller made any representation by word or conduct that it had ever sought city council approval or a driveway permit.

4. **Contracts § 16— conditions precedent**

   Conditions precedent are not favored in the law and provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction.

5. **Contracts § 16— sale of land — driveway permit not condition precedent**

   In an action to rescind a sale of land, plaintiff failed to show that the issuance of a driveway permit by a city was a condition precedent of the contract of sale.

6. **Deeds § 23— covenant of warranty — subdivision control ordinance — failure to obtain approval of plat**

   The existence of a city's subdivision control ordinance was not an encumbrance on title, and failure by the seller of land to obtain city council approval of a plat filed pursuant to the ordinance did not constitute a breach of covenant of warranty.

7. **Insurance § 148— title insurance — encumbrances — marketable title — subdivision control ordinance — failure to obtain approval for plat**

   The existence of a city's subdivision control ordinance and failure of the seller of land to obtain city council approval of a plat filed pursuant to the ordinance did not constitute a defect in or lien or encumbrance on title or render the title unmarketable within the meaning of a title insurance policy on the land.

8. **Insurance § 148— title insurance — access to and from property — commercial property — pedestrian access only**

   Provision of a title insurance policy insuring against loss resulting from "lack of a right of access to and from the land" applies only when the insured landowner has no right of access to and from the land and does not provide coverage because the landowner may not have the particular type of access which he deems most advantageous to him; therefore, the provision was inapplicable where the landowner was unable to obtain a driveway permit for commercial property but there was full and unhampered pedestrian access to and from the property.

APPEAL by defendant, Capitol Funds, Inc., and cross-appeal by plaintiff, from *McLelland, Judge,* 28 January 1974 Session of Superior Court held in WAKE County.

Civil action brought by the purchaser to rescind a sale of land or in the alternative to recover on a policy of title insurance.

Defendant, Capitol Funds, Inc., is the successor by corporate merger to Capitol City Plaza, Inc., the two corporations being treated for purposes of this case as one entity and being hereinafter referred to simply as "Capitol." By warranty deed dated 14 March 1969 recorded 21 March 1969 Capitol, in exchange for $75,000.00, conveyed to plaintiff, Marriott Financial Services, Inc., a tract of land fronting approximately 240 feet on the west side of Old Wake Forest Road in Raleigh. The property has a depth of 150 feet and its southern boundary is the center line of Crabtree Creek, which flows under a bridge which carries Old Wake Forest Road over the creek at the southeast corner of the property. Defendant, Lawyers Title Insurance Corporation, issued to Marriott its policy insuring fee simple title to the property.

Marriott brought this action on 13 October 1971 seeking to rescind the transaction by which it acquired title to the property and to recover from Capitol $75,000.00 paid for the property plus $1,042.47 which it paid on account of 1970 ad valorem taxes. In the alternative, Marriott seeks recovery of

these amounts from Lawyers Title. By agreement, the case was heard by the court without a jury.

Marriott's evidence showed the following: The subject property is a portion of a larger tract formerly owned by Capitol. In 1967 Capitol conveyed to Al Smith Buick, Inc., the part of the larger tract fronting on Old Wake Forest Road and adjoining the subject property on the north and west. In connection with this conveyance, Capitol made no application to obtain the approval of the Raleigh Planning Commission or the Raleigh City Council under the provisions of The Subdivision Standards Ordinance of the City of Raleigh. However, after the conveyance was made, Al Smith Buick, Inc., did apply for and obtain such approvals and in connection therewith a plat entitled "Property of Al Smith Buick, Inc.," was submitted to and approved by the City Council and was recorded in the office of the Register of Deeds of Wake County. This plat showed the boundaries of the lot which Capitol conveyed to Al Smith Buick, Inc., and also showed the adjoining lot, title to which was then being retained by Capitol and which Capitol subsequently conveyed to Marriott. Before the Raleigh city officials approved this plat for recording, a notation was placed thereon opposite an arrow which pointed to the portion of the property subsequently conveyed to Marriott, "Not an Approved Lot," and this notation was on the plat when it was signed by the corporate secretary of Capitol. The Director of City Planning for the City of Raleigh testified that the City Council, because of the heavy traffic on Old Wake Forest Road, had adopted a policy of not permitting any driveway connections into Old Wake Forest Road within 150 or 200 feet from the abutments on the bridge on which the road crosses over Crabtree Creek, and that the City Planning Commission and the City Council did not approve the lot shown on the plat as "Not an Approved Lot" because "they suspected that had they done so, they would have been a party to having to allow a driveway, which they didn't want to do."

In 1968 Mr. Walter L. Pippin, a real estate broker from Greensboro who dealt primarily in commercial and industrial properties, became interested in the lot which is the subject of the present litigation. Mr. Pippin made it his practice to search for locations which he thought were suitable for businesses and "then either list them or take an option on them and try to find a buyer." In following this practice, Mr. Pippin

found the subject property and determined from the tax records that it was owned by Capitol and that Mr. D. W. Royster, Sr., President of Capitol, who lived in Shelby, N. C., was the person to contact. Mr. Pippin went to Shelby and obtained from Capitol, for the payment of $1,000.00, a written option agreement dated 25 October 1968 by which Capitol gave Pippin the right until 1 March 1969 to purchase the subject property for $75,000.00 cash, less the sum paid for the option, the deed to be made to Pippin or "designated owners." By letter dated 27 February 1969 Pippin notified Capitol that he exercised the option, this letter stating:

> "The exercise of the option is subject to our attaining driveway permits, which should be completed next week."

On 28 February 1969 Capitol responded in a letter addressed to Pippin which contains the following:

> "We understand that the exercise of this option is subject to obtaining driveway permit and that you expect to complete same within the next week."

Pippin testified that at the time of exercising the option he had obtained a purchaser, the KDK Corporation, which planned to place a Roy Rogers Drive-In Restaurant on the property. Later it was decided that Marriott was to be the purchaser and KDK would lease from Marriott. A few days after Pippin notified Capitol of exercise of the option subject to attaining driveway permits, Pippin's son came to Raleigh and obtained on a plat of the subject property a handwritten notation, "O.K. one 45' Dr. to Wake For. Rd at north parking isle." This notation was dated 2 March 1969 and was signed by Don Blackburn, who was Traffic Engineer for the City of Raleigh. Blackburn did not have authority to bind the City of Raleigh to give a driveway permit.

The sale was closed on 21 March 1969. The price to Marriott was $90,000.00, of which Capitol received $75,000.00 and Pippin $15,000.00. Following closing of the sale Marriott applied to the Raleigh Planning Commission and to the Raleigh City Council for approval of the subdivision of the lot which Capitol had conveyed to Marriott. On 18 August 1969 the Raleigh City Council adopted a resolution denying the application, the resolution finding that:

> "It would be contrary to the public, peace, safety, and welfare of the inhabitants of the City of Raleigh to approve

any subdivision allowing access to Wake Forest Road within 200 feet of the Crabtree Creek Bridge in that said access would create a visual traffic and safety hazard and would in fact violate an established policy of the City."

Thereafter, Marriott demanded and received a refund of $15,000.00 from Pippin, and Marriott tendered a reconveyance to Capitol on condition Capitol refund to Marriott the purchase price of $75,000.00 and the amount of the 1970 ad valorem taxes which Marriott had paid, which tender was refused by Capitol.

At the conclusion of the evidence the court allowed motion of Lawyers Title under Rule 41(b) to dismiss, denied Capitol's similar motion, and entered judgment making findings of fact on which the court concluded that both parties to the conveyance mistakenly believed when the sale was closed that the City of Raleigh had granted the buyer a driveway permit and "[t]hat by reason of mutual mistake a contract legally valid was not formed between the parties." The judgment directed that Marriott be allowed to rescind, that it recover from Capitol $75,000.00 plus the amount paid as taxes, and that Marriott reconvey the property to Capitol.

From this judgment Capitol appealed, including among its assignments of error the denial of its Rule 41(b) motion to dismiss and the court's conclusion that because of mutual mistake no legally valid contract had been formed. Marriott, while seeking to uphold the judgment, filed a cross-appeal, assigning as errors the court's failure to conclude that Marriott had a right to rescind on certain additional grounds alleged in its complaint. In the alternative and in case its judgment against Capitol should be reversed, Marriott appealed from the portion of the judgment which granted the motion of Lawyers Title to dismiss Marriott's claim as to that defendant.

*Manning, Fulton & Skinner by Howard E. Manning and John B McMillan for plaintiff appellee and cross-appellant, Marriott Financial Services, Inc.*

*Maupin, Taylor & Ellis by Armistead J. Maupin and Thomas W. H. Alexander for defendant appellant, Capitol Funds, Inc.*

*Poyner, Geraghty, Hartsfield & Townsend by John L. Shaw and Cecil W. Harrison, Jr., for defendant appellee, Lawyers Title Insurance Corporation.*

PARKER, Judge.

### APPEAL BY DEFENDANT
### CAPITOL FUNDS, INC.

In concluding that by reason of mutual mistake no legally valid contract was formed between the parties, the trial court cited and relied upon *MacKay v. McIntosh*, 270 N.C. 69, 153 S.E. 2d 800 (1967). That case, however, is distinguishable on its facts from the case now before us and the holding in that case is not dispositive of the question presented by Capitol's appeal. In that case the defendant resisted specific performance of a contract by which she had agreed to purchase real property from plaintiff on the grounds that it had been the intention of plaintiff's sales agent to sell and the intention of defendant to purchase only land zoned for business; that the contract was entered into by defendant as result of an innocent misrepresentation of plaintiff's agent to the effect that the property was zoned for business, whereas in fact it was not so zoned. Our Supreme Court affirmed judgment granting rescission, citing 17 Am. Jur. 2d, Contracts, § 143, p. 490, to the effect that a contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended. In so holding the Court, in an opinion by Bobbitt, J. (now C.J.), said: "In our opinion, and we so hold, whether the subject property was within the boundaries of an area zoned for business is a factual matter; and, under the evidence, the mutual mistake as to this fact related to the essence of the agreement."

[1]  In the case now before us there was no evidence of any mutual mistake of fact. The only mistake shown by the evidence was that made by Marriott when it assumed that a legally effective permit allowing driveway access into the property from Old Wake Forest Road had been obtained from the City of Raleigh. Insofar as the evidence discloses Marriott made this assumption solely on the basis of the notation made on the plat obtained by Pippin's son. This notation was signed by Blackburn, Raleigh City Traffic Engineer, and Marriott's mistake was in assessing the extent of Blackburn's legal authority to bind the City, a mistaken judgment in which Capitol in no way participated. From the exchange of letters between Pippin and Capitol when Pippin gave notice of exercise of the option, it was clear that Pippin, not Capitol, assumed responsibility to obtain the driveway permit. Pippin did not represent Capitol,

and Capitol cannot be held responsible for such reliance as Marriott may have placed upon him with reference to the driveway permit. There was no evidence that any agent of Capitol ever assumed any responsibility, undertook any action, or at the time the sale was closed even had any knowledge as to what actions had been undertaken by Pippin or Marriott or anyone else to obtain the driveway permit. There was no evidence to support a finding that any agent of Capitol knew or had any responsibility to know whether such a permit had or had not been obtained at the time the sale was closed. Specifically, there was no evidence to support the trial court's finding, a factual finding though included among the court's conclusions, "[t]hat both parties to the conveyance mistakenly believed that the City of Raleigh had granted the buyer a driveway permit."

Among the court's conclusions was also the factual finding "that the City's prior determination by A. C. Hall, Jr., Planning Director, not to issue a permit for a driveway to Old Wake Forest Road was a fact subsisting at the time of the making of this contract for sale and of the sale of this lot." Again, there was no evidence to support such a finding. A. C. Hall, Jr., the Director of City Planning for the City of Raleigh, did testify to a restrictive policy which had been adopted by the City Council not to permit driveway access into Old Wake Forest Road within 150 or 200 feet of the bridge, but there was no evidence that the City had made any "prior determination" concerning driveway access specifically applicable to the lot here in question. The notation on the Al Smith Buick Company plat referring to Capitol's lot as "Not an Approved Lot" did not speak directly to approval or disapproval of driveway access but referred to the disapproval of the lot as a subdivided lot pursuant to Sec. 20-5(a) of the Raleigh City Code. That section is part of "The Subdivision Standards Ordinance of the City of Raleigh." Under that Ordinance the City's director of planning is given certain responsibilities, but the issuance of driveway permits is not among them. We note that Sec. 19-23(A) of the Raleigh City Code makes the issuance of driveway permits a function of the director of public works or his duly authorized agent. Insofar as the evidence in the record before us reveals, the determination not to issue a driveway permit directed specifically to the lot here in question and made by officials with power to bind the City was made for the first time in the City Council's Resolu-

tion adopted on 18 August 1969. This was approximately five months after the sale to Marriott was closed.

There was in this case no evidence that any transaction occurred between Capitol and Marriott or agents of either prior to the actual closing of the sale, and the only thing which then occurred insofar as the evidence discloses was the delivery of the deed and payment of the purchase price. Thus, unlike the situation presented in *MacKay v. McIntosh, supra,* there was here no contract made or transaction undertaken while both parties were acting under a mutual mistake of fact. On the contrary, the only finding which can be supported by the evidence is that Marriott acted under a mistaken judgment, unilateral to it and neither participated in nor induced by Capitol, as to the legal authority held by the Raleigh City Traffic Engineer.

Essentially, what is presented in this case is that a real estate sale was closed while one party, the purchaser, was acting under an erroneous conclusion as to the legal effect of known facts. "[T]his is a mistake of law and not of fact, and the rule is that ordinarily a mistake of law, as distinguished from a mistake of fact, does not affect the validity of a contract." *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488 (1952). Even should the mistake be considered as one of fact, our Supreme Court has not adopted the doctrine that unilateral mistake, unaccompanied by fraud, imposition, undue influence or like circumstances of oppression is sufficient to avoid a contract. *Tarlton v. Keith,* 250 N.C. 298, 108 S.E. 2d 621 (1959) ; *Cheek v. R. R.,* 214 N.C. 152, 198 S.E. 626 (1938). But see Annot., 59 A.L.R. 809; 3 Corbin, Contracts, § 608, pp. 669-78 (1960).

Because the evidence fails to support the trial court's findings and conclusion that the sale was closed under a mutual mistake of fact and that because thereof no legally valid contract was formed between the parties, Capitol's assignments of error directed to these findings and conclusion must be sustained.

CROSS-APPEAL BY PLAINTIFF,
MARRIOTT FINANCIAL SERVICES, INC.

In addition to pleading mutual mistake, Marriott alleged as additional grounds for rescission illegality of the conveyance, fraud, breach of condition precedent, and breach of covenant of warranty. By way of cross-appeal Marriott assigns error to the

court's· failure to find and conclude that it was entitled to rescission on the additional grounds alleged. We find no error in the court's rulings in this regard and these assignments of·error are ·overruled.

[2]    Marriott's contention that the sale was illegal is grounded in its argument that Capitol had not complied with the provisions of The Subdivision Standards Ordinance of the City of Raleigh. Sec. 20-5(a) of that Ordinance provides:

> · "Before any real property located within the city or located outside the city within two (2) miles in any direction of the corporate limits shall be subdivided and offered for sale, and before any plat thereof shall be recorded in the registry of Wake County, the subdivision plat thereof shall be approved by the city council, and such approval entered in writing on the plat by the city clerk and treasurer, after first having been submitted to the city planning commission in accordance with the provisions of this chapter."

Sec. 20-11 of the Ordinance directs that the register of deeds shall. not file or record a plat of a subdivision of land located within the territorial jurisdiction of the City without the approval of the legislative body as required in the Ordinance and makes null and void the filing or recording of such a plat without the required approval of the municipal legislative body. These. provisions are also contained in Section 1 of the enabling legislation, being Chap. 921 of the 1955 Session Laws. Sec. 4 of the ·enabling Act further provides that "any person who, being the owner or agent of the owner of any land located within the platting jurisdiction granted to the municipality, thereafter transfers or sells such land by reference to a plat which was not recorded in the office of the Register of Deeds of ·Wake County, showing a subdivision of such land before such plat has been approved by said legislative body, shall upon conviction be guilty of a misdemeanor." What the statute condemns as a misdemeanor is the description of land in any contract of·sale, deed, or·other instrument of transfer by reference to a subdivision plat that has not been properly approved and recorded. See *State v. McBane,* 276 N.C. 60, 170 S.E. 2d 913 (1969). ·However, we find nothing in the Ordinance or in the enabling legislation under which it was enacted which expressly or by necessary implication renders any contract, deed, or other instrument either void or voidable. To work so drastic an effect

upon land titles requires a clearer expression of legislative intent than can be found in the statutes or Ordinance. We hold that the court did not err in concluding "[t]hat the sale by Capitol to Marriott was not illegal, there being nothing in Section 20-5(a), Raleigh City Code, purporting to prohibit or avoid a sale made without prior City Council approval, subjecting the seller in such case only to the criminal penalty for a misdemeanor specified in the General Statutes."

[3] We also agree with the trial court's finding and conclusion "[t]hat the facts do not disclose fraud on the part of Capitol; that Capitol made no representations by word or conduct to Pippin or anyone else that it had or had ever sought City Council approval or a driveway permit." Even had there been evidence of fraud, and we find none in the record, still the burden was upon Marriott to establish it to the satisfaction of the trial court as finder of the facts, and this Marriott failed to do.

[4, 5] There was no error in the trial court's conclusion "[t]hat the issuance of a driveway permit by the City of Raleigh was not a condition precedent of the contract of sale, there being no evidence that any of those involved in the negotiations so regarded that matter at the time." Conditions precedent are not favored in the law and provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction. Marriott, which had the burden of proof, failed to produce evidence which would compel a construction finding a condition precedent in the transaction here involved, and there was no error in the trial court's refusal to so find.

[6] Finally, the evidence discloses no breach in the covenants in Capitol's deed to Marriott. The existence of the City's subdivision control Ordinance was not an encumbrance on title, *Fritts v. Gerukos*, 273 N.C. 116, 159 S.E. 2d 536 (1968), and failure to obtain City Council approval on a plat filed pursuant to the Ordinance did not prevent Capitol from conveying fee simple title to Marriott.

[7] We also find no error in the court's granting Lawyers Title's motion to dismiss made under Rule 41(b) on the ground that upon the facts and the law Marriott has shown no right to relief under the policy of title insurance. By that policy Lawyers

Title insured Marriott, subject to certain expressed "Conditions and Stipulations," against loss by reason of:

"any defect in or lien or encumbrance on the title . . . ; or unmarketability of such title; or lack of a right of access to and from the land."

As above noted, neither the existence of the City subdivision control Ordinance nor the failure to obtain City Council approval on a plat constituted a defect in or lien or encumbrance on the title, *Fritts v. Gerukos, supra,* and Marriott does not contend that any other defect, lien, or encumbrance exists. A "marketable title" is one free from reasonable doubt in law or fact as to its validity, *Pack v. Newman,* 232 N.C. 397, 61 S.E. 2d 90 (1950), and, again as above noted, Marriott's title was not rendered invalid by reason of the existence of the Ordinance or failure to obtain City Council approval of a plat. In this connection, note should also be taken of the express exclusion from coverage contained in paragraph 2 of the "Conditions and Stipulations," which is as follows:

"2. Exclusions from the Coverage of this Policy

"This policy does not insure against loss or damage by reason of the following:

"(a) Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or employment of the land, or regulating the character, dimensions, or location of any improvement now or hereafter erected on said land, or prohibiting a separation in ownership or a reduction in the dimensions or area of any lot or parcel of land."

Even if otherwise within the coverage of the policy, any loss by reason of the subdivision control Ordinance was expressly excluded from coverage by the above-quoted provision.

[8]    Finally, there has been no showing of any "lack of a right of access to and from the land" within the meaning of those words as contained in the title policy. We construe the policy provision insuring against loss resulting from "lack of a right of access to and from the land" as insuring against the situation which exists when the land in question is land-locked, i.e., the insured land owner has no right of access to and from his land. We do not construe the policy as providing coverage

because the land owner may not have the particular type of access which he deems most advantageous to him. Here, the evidence shows that the eastern boundary of the land runs with the west right-of-way line of Old Wake Forest Road and borders on the sidewalk thereon. Marriott has full and unhampered pedestrian access to and from its land, and we do not construe the policy as insuring Marriott against any loss resulting from its failure to obtain a driveway permit from the City.

The result is:

On Capitol's appeal, the judgment against it allowing rescission on the grounds of mutual mistake is

Reversed.

On Marriott's appeal, the judgment denying relief upon the other grounds alleged and dismissing the claim against Lawyers Title is

Affirmed.

Chief Judge BROCK and Judge MARTIN concur.