**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HAW RIVER LAND & TIMBER
COMPANY, INCORPORATED; GEORGE W.
RIDDLE,
<u>Plaintiffs-Appellants,</u>

No. 97-2549

v.

LAWYERS TITLE INSURANCE
CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-96-511-5-BO)

Argued: June 3, 1998

Decided: July 24, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and FABER,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Faber joined. Judge Hamilton wrote a dissenting opin-
ion.

_____

**COUNSEL**

**ARGUED:** Odes Lawrence Stroupe, Jr., BODE, CALL &
STROUPE, L.L.P., Raleigh, North Carolina, for Appellants. Curtis

James Shipley, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Anthony D. Taibi, BODE, CALL & STROUPE, L.L.P., Raleigh, North Carolina; Joseph N. Callaway, BATTLE, WINSLOW, SCOTT & WILEY, P.A., Rocky Mount, North Carolina, for Appellants. David E. Fox, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

After Haw River Land & Timber Company, Inc., and George W. Riddle (collectively hereafter, "Haw River Timber") purchased the timber rights to 712 acres of land in Wake County, North Carolina, it learned that 179 acres lay within an environmental buffer zone created by a municipal ordinance which effectively prohibited timbering. Contending that the ordinance rendered title to the 179 acres of timber "unmarketable," Haw River Timber sued the title insurance company which insured against the "unmarketability of title" to the timber rights. The district court entered summary judgment in favor of the title company on the ground that the title was marketable and the economic value of the timber was irrelevant to the question.

Because the adverse economic impact of a municipal ordinance does not render title to timber legally unmarketable, we conclude that the loss sustained by Haw River Timber because of restrictions imposed by the municipal ordinance is not covered by the title insurance policy. Accordingly, we affirm.

I

On September 13, 1995, Haw River Timber purchased "all the merchantable timber of all kinds and descriptions" standing on 712 acres of real property in Garner, North Carolina, from R.B. and Ida Mae Barefoot. The timber deed granted title to the standing timber together with the right to "pass and repass," at its option, on the underlying land to cut and remove the timber for a period of three years. Haw River Timber paid $800,000 for these timber rights.

2

In connection with the timber purchase, Haw River Timber purchased title insurance from Lawyers Title Insurance Corporation which issued a standard form American Land Title Association (ALTA) policy. The policy insured Haw River Timber's fee simple title to the merchantable timber for up to $800,000 against loss or damage suffered by reason of (1) title to timber being vested in another party; (2) any defect in or lien or encumbrance on the title to the timber; (3) unmarketability of title to the timber; or (4) lack of a right of access to the timber. The policy expressly excluded from coverage any loss or damage resulting from an ordinance, zoning law, or environmental protection legislation regulating the use of land "except to the extent that a notice of enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy."

After Haw River Timber began harvesting timber on a portion of the 712-acre tract, it was informed by the Town of Garner that some of the property adjacent to Swift Creek was subject to municipal ordinances passed in 1988, 1989, and 1994 to preserve the vegetation in that area. The ordinances were enacted in response to a recommendation of the North Carolina Department of Natural Resources and Community Development that the Swift Creek watershed be upgraded for environmental purposes. The Town of Garner's ordinances preserve a buffer zone within an area 500 feet from the center of the creek or the 100-year flood plain plus 50 feet, effectively prohibiting timber harvesting within the buffer zone. Of the total 712-acre tract of which Haw River Timber held the timber rights, 179 acres fell within the buffer zone. Haw River Timber has valued the timber in the buffer zone, after cutting and hauling, at $374,769.

In its brief on appeal, Haw River Timber represents that it had a title search performed prior to closing, which did not reveal the existence of the conservation ordinances. In addition, it states that the ordinances were not cross-indexed in the Wake County Register of Deeds with the sellers or previous land owners in the chain of title.

Faced with a $375,000 loss attributed to the impact of Garner's municipal ordinances, Haw River Timber made a series of claims against Lawyers Title under differing theories for a reimbursement of

3

the loss. When Lawyers Title denied coverage, Haw River Timber filed suit in the General Court of Justice in Wake County, North Carolina, and Lawyers Title removed the case to federal court under 28 U.S.C. §§ 1441 and 1332.

On cross-motions for summary judgment, the district court entered judgment in favor of Lawyers Title and against Haw River Timber on the ground that the municipal ordinance neither constituted an encumbrance on plaintiffs' title nor otherwise deprived it of marketable legal title. Central to the court's reasoning was the principle that zoning ordinances that affect all land generally are not"encumbrances" and that the use restriction on some of the property did not render title to the property "unmarketable," since it "in no way tainted title," even if it "imposed an economic hardship on plaintiffs."

This appeal followed.

II

Haw River Timber contends that the scope of the Lawyers Title policy, insuring its title to the timber rights on 712 acres, covers the loss it sustained from the zoning ordinance that prohibits it from cutting and removing the timber to which it had title. It argues that since it bought only the timber rights and not the underlying property, its use of the timber was dependent on its right to remove the timber from the property. It maintains that its title was worthless if it could not remove the timber; that title to unremovable timber is essentially no title at all because it could not market, sell, or transfer its title to timber with the restrictions against timbering imposed by the ordinances.

While this argument has substantial appeal on a practical level, it fails to recognize any distinction between marketable title and marketable property and to comprehend the risks insured by the Lawyers Title policy.

As with any insurance policy, the policy language itself defines the risks transferred to the insurance company. And risks not explicitly transferred by the policy are borne by the insured. The form of policy

used in this case by Lawyers Title was a standard form ALTA policy which provides that Lawyers Title insured Haw River Timber from any "loss or damage . . . sustained or incurred by the insured by reason of:

> 1. Title to the estate or interest described . . . being vested other than as stated therein;
>
> 2. Any defect in or lien or encumbrance on the title;
>
> 3. Unmarketability of the title;
>
> 4. Lack of a right of access to and from the land."

The policy defines the "unmarketability of the title" as "an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest . . . to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title."

The title insured in this case was evidenced by a "Timber Deed" to 712 acres granting Haw River Timber free access to the property and the right to cut and remove all timber for a period of three years. The grantees warranted that they were "seized of said premises in fee and have a right to convey timber" described in the deed without encumbrance. Under North Carolina law, standing timber constitutes real property, and when it conforms with the formal requirements of real property deeds, a timber deed conveys a property right to the grantee, whether the timber is later cut and removed or not. See Bishop v. DuBose, 113 S.E.2d 309, 312 (N.C. 1960); Winston v. Williams & McKeithan Lumber Co., 42 S.E.2d 218, 220 (N.C. 1947). Title to timber which is not removed reverts back to the grantor after the time specified in the deed for removal. See Bishop, 113 S.E.2d at 312. A timber deed is distinct from a contract to buy "logs on a stump," which transfers title to timber only after the logs are severed. See Bishop, 113 S.E.2d at 313. Thus, in this case, the Lawyers Title policy insured title to standing timber, whether the timber was removed or not.

5

Haw River Timber nevertheless argues that because the Town of Garner had enacted ordinances which prohibited Haw River Timber from cutting and removing timber from 179 acres adjacent to Swift Creek, its title to the timber was "unmarketable." Such an argument presumes that the inability to cut and remove timber, rendering it valueless to Haw River Timber, is the equivalent of unmarketable title. This conceptual merger of marketable title with marketable property does not, however, have support in the law.

Title refers to the legal ownership of a property interest so that one having title to a property interest can withstand the assertion of others claiming a right to that ownership. But title to property does not characterize the property itself as valuable, merchantable, or even usable. See Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 209 S.E.2d 423, 430 (N.C. Ct. App. 1974), aff'd on other grounds , 217 S.E.2d 551 (N.C. 1975). Thus, while title to property may be unassailable, the property itself may have no value and may even constitute a burden to its owner. For these reasons, an insurance policy insuring legal title covers only the right of the owner to assert ownership against others claiming ownership or an interest in that ownership. And marketable title is one which is "`free from reasonable doubt in law or fact as to its validity.'" Burkhead v. Farlow, 146 S.E.2d 802, 805 (N.C. 1966) (quoting Pack v. Newman, 61 S.E.2d 90, 92 (N.C. 1950)); accord Black's Law Dictionary, 970-71 (6th ed. 1990).

Our conclusion that the marketability of legal title to property in North Carolina is unrelated to that property's economic value is buttressed by state cases interpreting the North Carolina Marketable Title Act, which do not inquire into the value of property in order to determine the legal question of marketability of title. In Beam v. Kerlee, 461 S.E.2d 911, 917 (N.C. Ct. App. 1995), the North Carolina Court of Appeals held that in order to establish title to real property under the Real Property Marketable Title Act, N.C. Gen. Stat. § 47B-2 (1984), a person must establish:

> (1) That [he], alone or together with his predecessors in title, was vested with an estate in real property which had been of record for at least 30 years; (2) the public record showed a title transaction at least thirty years old which purported to vest title in [him] or some other person from whom, by

6

one or more title transactions, the property had passed to [him]; and (3) that nothing appeared of record to divest [him] of the estate.

Moreover, in an action to quiet title under North Carolina law, satisfaction of the Marketable Title Act is all that is required, and the issue of whether the real property at issue has value is irrelevant to establishment of marketable title. See, e.g., Chappell v. Donnelly, 439 S.E.2d 802, 805 (N.C. Ct. App. 1994); see also James M. Pedowitz, What Title Insurance Does Not Cover, 416 PLI/Real 133, 135-37 (1996) (standard ALTA title insurance policies do not insure "the value of the property -- or that it has any value at all").

While it is true that the Town of Garner's zoning ordinances have effectively frustrated Haw River Timber's expectation of timbering 179 of the 712 acres granted under the timber deed, thereby substantially reducing the economic value of the interest purchased, Haw River Timber raises no issue about whether it received legal title to the timber from the grantors. And the Lawyers Title policy insuring marketable title under the timber deed only guarantees Haw River Timber a title that could be enforced in a suit for specific performance, not the economic value of the timber purchased. Indeed, the explicit definition of marketable title provided in the policy limits any more expansive notion by insuring against only those title defects that would entitle a purchaser "to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title." The ordinances on which Haw River relies as a title defect do not impair the grantor's ability to convey a timber deed. Thus, we find fitting what the North Carolina Court of Appeals observed in an analogous context:

> [W]e find nothing in the Ordinance or in the enabling legislation under which it was enacted which expressly or by necessary implication renders any contract, deed, or other instrument either void or voidable. To work so drastic an effect upon land titles requires a clearer expression of legislative intent than can be found in the statutes or Ordinance.

Marriott, 209 S.E.2d at 429. It is similarly so with Garner's ordinances.

7

III

Should any doubt remain about whether an ALTA standard form title policy insures against economic loss occasioned by a town ordinance, that doubt is put to rest by an applicable policy exclusion which excludes coverage for any loss or damage arising by reason of:

> Any law, ordinance, or governmental regulation (including but not limited to building and zoning laws, ordinances or regulations) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of land; . . . or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

The ordinances enacted by the Town of Garner during the period from 1988 through 1994 establish an environmental buffer zone consisting of 500 feet on either side of Swift Creek, in which vegetation is preserved. They effectively prohibit Haw River Timber from cutting and removing its timber from this zone. Haw River Timber concedes that these ordinances fall within the language of the policy exclusion and that any loss occasioned by them is excluded from coverage of the policy unless coverage for the loss is provided by the last clause of exclusion -- an exception to the exclusion -- providing coverage for a loss caused by an ordinance "to the extent that a notice of enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation . . . has been recorded in the public records." Haw River Timber argues that in this case the exception has been met because the Town of Garner ordinances were "recorded at the local register of deeds office" in minute books and that "the recording of the Ordinances is `notice of enforcement'" as would be covered by the policy.

Thus, the language of the policy's exclusion concededly denies coverage for the adverse economic impact caused by any ordinance or environmental protection enactment unless (1) a "notice of enforcement" of the ordinance or a "notice of [an] encumbrance resulting

8

from a violation" has been issued and (2) such a notice has been "recorded in the public records." The policy defines public records to mean "records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge." In short, the adverse impact of ordinances is excluded from the scope of a standard ALTA title policy unless a notice of enforcement or of a violation is recorded in records established to put purchasers of real property on constructive notice of matters about the property. Stated otherwise, the risk transferred to the insurance company by the policy is the risk of not conducting an adequate title search among the records established by the state for searching titles to real property.

North Carolina law requires that the county commissioners of each county "provide for the register of deeds" in a "book, to be called Registration of Titles." See N.C. Gen. Stat. § 43-13. Since conveyances of land, contracts and options to convey land, leases over three years, and mortgages and deeds of trusts are required to be recorded in the Registration of Titles book in order to be effective against lien creditors or purchasers for value, see N.C. Gen. Stat. §§ 47-18, 47-20, the book establishes a chain of title on which purchasers can rely. See Hensley v. Ramsey, 199 S.E.2d 1, 10 (N.C. 1973) (purchaser charged with notice of all facts disclosed by an examination of the chain of title); see also Chrysler Credit Corp. v. Burton , 599 F. Supp. 1313, 1318 & n.9 (M.D.N.C. 1984) ("[P]ublic record concerning the status of land titles" is established by recording in the Registration of Titles as required by North Carolina General Statutes §§ 47-18 & 47-20). Moreover, the North Carolina courts have clarified that the purpose of these North Carolina recording provisions is to establish a "single reliable means for purchasers to determine the state of the title to real estate," and to impute constructive notice only of "all duly recorded documents that a proper examination of the title would reveal." See Stegall v. Robinson, 344 S.E.2d 803, 804 (N.C. Ct. App. 1986).

While the Registration of Titles book constitutes the "sole and conclusive legal evidence of title," N.C. Gen. Stat.§ 43-22, liens, encumbrances, and other matters affecting specific parcels of real property may be recorded against the property in accordance with state statute and thereby put purchasers of that property on constructive notice also about them. For example, North Carolina provides for a "Record of

9

Lis Pendens," see N.C. Gen. Stat. § 1-117; a "judgment docket" or book, see N.C. Gen. Stat. §§ 1-234 through 1-237, 1-208.1, 43-45; and a "Book of Wills," see N.C. Gen. Stat. § 31-20.

Thus, in order to be contained in the "public records," as used in the ALTA title policy, a notice of enforcement or of an encumbrance would have to be recorded in one of these public records designed to put purchasers of real property on constructive notice about matters affecting title to the property which they are purchasing.

This interpretation of the title insurance policy language is consistent with the principles of marketable title discussed above. Since the purpose of title insurance is to insure that there are no defects in the legal title to the real property interests being insured, the adverse impact of zoning ordinances and regulations would be covered only if they somehow affected title to specific property as it appeared in state established records putting persons on legal notice about matters affecting that property. Thus, in North Carolina as elsewhere, zoning or environmental laws of general application, which are not recorded against specific parcels of property, are generally excluded from standard-form ALTA title insurance policies. See Marriott, 209 S.E.2d at 430; see also Pedowitz, supra , 416 PLI/Real at 142-44 (agreeing with this interpretation of Marriott ).

We now turn to determine (1) whether a notice of enforcement or notice of violation of the Town of Garner's ordinances ever issued, and (2) whether the notices were recorded in public records established by North Carolina for the purpose of imparting constructive notice of matters relating to real property to purchasers of such property for value and without knowledge.

First, there is no evidence that any enforcement proceeding was ever initiated or "notice" given to enforce the buffer zone established by Garner's ordinances. Nor is there any indication that a notice of a violation of that buffer zone was ever issued. This is not surprising because until Haw River Timber was granted the timber deed, no one had apparently attempted to harvest the timber on the 179 acres adjacent to Swift Creek.

Second, there is no evidence that any notice of an enforcement action or a violation of an ordinance was recorded in the Record of

10

Lis Pendens, the judgment docket, or the Registration of Titles book maintained in Wake County where the property was located. Indeed, there is no evidence that the ordinances themselves were ever so recorded. While the ordinances may have been on file in minute books maintained in the office of the register of deeds, this does not satisfy the requirements of North Carolina statutes adopted to put purchasers on constructive notice about matters affecting the real property that they are purchasing. Were we to hold, contrary to the language of the title policy in question, that the inclusion of the town ordinances of general application maintained in minute books located in the office of the register of deeds would have the same effect as matters recorded against specific property, we would frustrate not only the intent of the title insurance policy but also North Carolina policy that purchasers have a "reliable means for purchasers to determine the state of the title to real estate." Stegall, 344 S.E.2d at 804; see also Chrysler Credit, 599 F. Supp. at 1318.

For the reasons given, the judgment of the district court is

AFFIRMED.

HAMILTON, Circuit Judge, dissenting:

The majority rejects Haw River's claim seeking title insurance coverage on two alternative theories. First, the majority concludes that Haw River's title to the 179 acres of land lying within the environmental buffer zone is not "unmarketable" and, therefore, the ALTA policy's coverage provision for "unmarketability of the title" does not apply. See ante at 4-7. Second, the majority concludes that even if Haw River's title to the timber is unmarketable, the exception to the zoning ordinance exclusion does not apply and, therefore, the ALTA policy provides no coverage for the loss. See ante at 8-11. In my view, both of these conclusions rest on unpersuasive reasoning. The former conclusion is inconsistent with the North Carolina Supreme Court's decision in Marriott Financial Serv. v. Capitol Funds, Inc., 217 S.E.2d 551 (N.C. 1975). The latter conclusion is inconsistent with the North Carolina rule that if an insurance contract term is capable of one or more interpretations, the one most favorable to the insured applies. Because I believe Haw River suffered a loss covered by the

11

ALTA policy and that the exception to the zoning ordinance exclusion does apply, I respectfully dissent.

I

In Marriott, the plaintiff purchased land near a bridge in a heavily traveled area of Raleigh, North Carolina. Id. at 553. Because of the high traffic flow, the Raleigh City Council adopted a policy to deny all driveway permit applications within 200 feet of the bridge. Id. The policy was not embodied in an ordinance and therefore was not recorded at the county courthouse. When the plaintiff subsequently sought to subdivide the tract, which required separate driveways for each new lot, the permit request was denied because of the Raleigh City Council's policy. Id. at 554. Marriott brought suit against the title insurance carrier contending that the loss in the value of the property caused by the government-created restriction on access was a covered risk under the title insurance policy issued to the plaintiff. The policy issued to the plaintiff insured against, among other things, losses due to "the lack of a right of access to and from land." Id. at 564.

The North Carolina Court of Appeals held that the policy provisions insuring against the lack of access applied only when the landowner had no right of access to and from the land. Id. at 565. According to the North Carolina Court of Appeals, even pedestrian access to the property was sufficient to preclude coverage under the title insurance policy. Id.

On appeal, the North Carolina Supreme Court rejected the North Carolina Court of Appeals' view that the presence of pedestrian access was sufficient to preclude coverage. Id. Instead, the North Carolina Supreme Court adopted a reasonable insured approach. The North Carolina Supreme Court held "that when an insurer contracts to insure against lack of access to property, it must be deemed to have insured against the absence of access which, given the nature and location of the property, is reasonable access under the circumstances." Id.

Applying this reasonable insured approach, the North Carolina Supreme Court found coverage. Id. In reaching this conclusion, the North Carolina Supreme Court stated that "it would strain credulity

12

beyond reasonable limits to hold that the parties to this [insurance] contract understood that the insurance as to access could be satisfied by pedestrian access." Id. The North Carolina Supreme Court reasoned that the "insured must have contemplated insurance protection against lack of vehicular access." Id.

Marriott instructs us to ask, given the circumstances surrounding the insurance contract at issue, whether Haw River contemplated that the "unmarketability of the title" provision would cover losses arising from a zoning ordinance filed in the Register of Deeds Office which rendered the timber economically unmarketable. If we answer this question in the affirmative then coverage attaches.

In this case, an insured in the same position as Haw River would have understood the ALTA policy to cover losses due to a zoning ordinance filed in the Register of Deeds Office that rendered the timber economically unmarketable. People acquire title to timber to market the harvested timber. Such is the nature of a timber deed. A timber deed holder cannot build on the property or otherwise use it in a recreational sense. In essence, the insured enjoys no use or enjoyment of the timber other than the ability to market it. Because the sole purpose behind the acquisition of a timber deed is to harvest and sell the timber, it follows that a reasonable insured would understand "unmarketability of the title" as insuring against the risk of loss due to the existence of a recorded local ordinance which rendered the timber economically unmarketable.

II

The ALTA policy contains a general exclusion for, inter alia, zoning ordinances relating to environmental protection. There is, however, an exception to the zoning ordinance exclusion. The exception applies when "notice of the enforcement [of the ordinance] . . . has been recorded in the public records." Although the term "notice of enforcement" is not defined in the ALTA policy, the term "public records" is defined. That term is defined as "records established under state statutes . . . for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge." In this case, the public records is the Register of Deeds of Wake County.

13

The majority concludes that the exclusion applies, but the exception does not. Although I agree the exclusion applies, as the ordinances at issue are zoning ordinances relating to environmental protection, the exception to the exclusion applies as well. In this case, the provision "notice of enforcement" is ambiguous. The term could be construed as applying when a violation of an ordinance is recorded in the public records. Alternatively, the term could be construed as applying when the ordinance is recorded in the public records.

Under North Carolina law, if an insurance contract term is capable of one or more interpretations, the one most favorable to the insured applies. See Mills v. State Life & Health Ins. Co., 135 S.E.2d 586, 590 (N.C. 1964). Here, the interpretation most favorable to the insured is that the notice of enforcement provision applies when the zoning ordinance is recorded in the public records. It follows that because the zoning ordinances at issue were filed in the Register of Deeds of Wake County on the date the policy was issued to Haw River, the exception to the exclusion applies.

III

In summary, Haw River suffered a loss covered by the ALTA policy and the exception to the zoning ordinance exclusion applies. Therefore, I respectfully dissent.

14