**CHRYSLER CREDIT CORPORATION, Plaintiff,**

v.

**Graydon Coleman BURTON, Janis Wynne King Burton, NCNB National Bank of North Carolina, and John M. Brubaker, Trustee, Defendants.**

**No. C–83–791–WS.**

United States District Court,
M.D. North Carolina,
Winston-Salem Division.

Dec. 17, 1984.

Walter W. Pitt, Jr., and Joseph T. Carruthers, of Bell, Davis & Pitt, P.A., Winston-Salem, N.C., for plaintiff.

Graydon Coleman (Coley) Burton, pro se.

Benjamin F. Davis, Jr., of Smith, Moore, Smith, Schell & Hunter, Greensboro, N.C., and B. Ervin Brown, II of Badgett, Calaway, Phillips, Davis, Stephens, Peed & Brown, Winston-Salem, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter came before the Court on plaintiff's Motion for Summary Judgment (July 17, 1984) and defendants' Motion for Summary Judgment (July 17, 1984) pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court will grant the plaintiff's motion as to the conveyance between defendants Graydon Coleman Burton (Coley) and Janis Wynne King Burton (Janis), and deny the motion as to any other issues. The Court will grant defendants NCNB and John M. Brubaker's motion as to the conveyance between NCNB and defendants Coley and Janis Burton. The Court will deny defendants NCNB and Brubaker's motion on their cross-claim against defendants Coley and Janis Burton.

## I. FACTS

On June 15, 1979, plaintiff filed a Complaint in Forsyth County Superior Court [1] against several individuals (including defendant Coley Burton) all of whom had signed the same Continuing Guaranty. Under the terms of the Guaranty, defendant Coley Burton and the other individuals were "primary obligors." Plaintiff's Brief In Support of Motion for Summary Judgment, Exhibit 1 (July 26, 1984). The principal debtor, Burton Dodge, Inc. was indebted to plaintiff in the amount of $174,938.22. Plaintiff's Brief, Exhibits 4 & 5. On February 13, 1981, summary judgment was entered in favor of Chrysler on the issue of liability but not damages. Plaintiff's Brief, Exhibit 6. On July 10, 1981, Coley Burton conveyed the real estate in issue here to his fiancee, Janis King. On July 24, 1981, a Consent Judgment was entered in this action against defendant Coley Burton and others for the amount of $75,000 plus cost. Plaintiff's Brief, Exhibit 7. On September 30, 1982, Janis King Burton and husband executed a deed of trust to Brubaker, Trustee for NCNB. This suit was commenced on August 10, 1983.

Prior to July 10, 1981, defendant Coley Burton was the sole owner of two improved tracts of real estate in Surry County which were used as business property. On July 10, 1981, defendant Coley Burton conveyed these two tracts to defendant Janis (then) King. At the time of the conveyance defendants Coley Burton and Janis Burton were engaged to be married. Deposition of Janis Burton at 4 (August 1, 1984). Although five dollars in deed stamps [2] were placed on the deed defendant Janis Burton gave defendant Coley Burton no money or any tangible item in exchange

---

1. This action was later transferred to Surry County.

2. The five dollars in deed stamps would represent $5,000 of consideration received by the grantor. The deed also recites ten dollars in consideration. Deposition of Janis Burton, Exhibit 1.

for the property.[3] Deposition of Coley Burton at 4–5 (August 1, 1984); Deposition of Janis Burton at 9–10. At the time of the conveyance defendant Coley Burton retained substantially no assets; the piece of land was his principal asset. Deposition of Coley Burton at 4–5. Subsequently, September 27, 1981, defendants Coley Burton and Janis King were married and presently remain husband and wife.

On September 30, 1982, defendants Coley Burton and Janis Burton executed a Deed of Trust to defendant NCNB and defendant Brubaker (as Trustee) to secure a loan for the amount of $30,000. Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 2; Affidavit of John Brubaker, Exhibit A (July 25, 1984). At the time of defendant NCNB's loan transaction with defendant Coley Burton and Janis Burton, NCNB obtained an Attorney's Certificate of Title which did not reveal any prior judgments or liens in the chain of title in favor of the plaintiff. Affidavit of Brubaker, Exhibit B & E. This obligation was renewed on March 30, 1983, with the same procedures being followed.

## II. DISCUSSION

Plaintiff contends that the July 10, 1981, conveyance between defendants Coley Burton and Janis Burton was a fraudulent conveyance under N.C.Gen.Stat. §§ 39–15 to –22. Plaintiff also asserts that the September 30, 1982 Deed of Trust to defendant NCNB is void as a fraudulent conveyance. Defendants NCNB and Brubaker allege that the September 20, 1982 Deed of Trust is valid and not voidable under North Carolina law. These defendants also allege that defendants Coley and Janis Burton are lia-

ble for costs and expenses incurred in this action because of provisions in the Deed of Trust. Defendants Coley and Janis Burton assert that the July 10, 1981 conveyance was not a fraudulent conveyance because valuable consideration passed.

■ This case presents issues of first impression involving the application of North Carolina fraudulent conveyance law.[4] In a diversity case the Court enforcing state enacted rights must apply the law of North Carolina as declared by its legislature in a statute or by the North Carolina Supreme Court in a decision. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). If there are no decisions by the highest court of a state then a federal court must apply what it finds to be the state law after giving "proper regard" to relevant rulings of other courts of the state. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). In the absence of state court authority a federal court must apply the law as it appears the North Carolina Supreme Court would rule.[5] *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974). This case, involving as it does real property issues, statutory reconciliation and interpretation, archaic principles and novel factual settings, calls attention to the "mounting mischief inflicted on the federal judicial system" which Justice Frankfurter described as the result of diversity jurisdiction. *Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 54, 75 S.Ct. 151, 155, 99 L.Ed. 59, 65 (1954) (concurring opinion).

---

**3.** It should be noted the same attorney that defended the defendant Coley Burton, against suit by the plaintiff on the guaranty, drew the deed conveying the property to defendant Janis Burton. The propriety of an attorney engaging in such conduct is questionable.

**4.** Presently there is no procedure available for certifying controlling questions of unsettled state law to the North Carolina Supreme Court. This case presents a persuasive argument for the adoption of such a procedure.

**5.** The Court must choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely to adopt in the future. *See* C. Wright, *Handbook of the Law of Federal Courts* § 58 at 375 (4th ed.1983). In so doing the Court is mindful of general principles of fairness and justice that are important in judicial decision making.

## A. NCNB DEED OF TRUST

■ This transaction raises issues concerning the interplay of the recordation statutes and fraudulent conveyances statutes. The policies behind these two statutory schemes differ, one promotes the certainty of records, the other prevents fraud. The Court must be mindful to avoid unwarranted disruption of these policies which would undermine the effectiveness of the statutory scheme. If two acts of the legislature are applicable to the same subject, their provisions are to be reconciled if this can be done by fair and reasonable intendment. *Highway Commission v. Hemphill,* 269 N.C. 535, 153 S.E.2d 22 (1967). However, to the extent that they are necessarily repugnant, the one last enacted shall prevail.[6] *Id.*

North Carolina fraudulent conveyance law has as its cornerstone the venerable case of *Aman v. Walker,* 165 N.C. 224, 81 S.E. 162 (1914). Among the principles established in *Aman,* the North Carolina Supreme Court stated, "If the conveyance is upon valuable consideration and made with the actual intent to defraud creditors upon the part of grantor alone, not participated in by the grantee and of which intent he had no notice, it is valid." *Aman,* 165 N.C. at 227, 81 S.E. at 164.[7] "According to *Aman* when a conveyance is made by a debtor for valuable consideration, it is fraudulent and may be set aside only when the conveyance was (1) made with the intent to defraud creditors and (2) the grantee either participated in the intent or had notice of it." *Edwards v. Northwestern Bank,* 39 N.C.App. 261, 269, 250 S.E.2d 651, 659 (1979). *Affirmed on other grounds,* 53 N.C.App. 492, 281 S.E.2d 86 (1981). NCNB alleges that the above standard renders the June 23, 1983 deed of trust a valid transaction despite the grantor's intent.

■ North Carolina law, distilled in *Aman,* protects bona fide purchasers from creditors of the grantor. In order to be protected a grantee must first be a pur-

chaser for value. NCNB loaned the defendants Janis and Coley Burton $30,000 which was secured by a deed of trust on the contested property. In North Carolina a deed of trust to secure a present loan constitutes the beneficiary a purchaser for value. *See Fowle v. McLean,* 168 N.C. 537, 84 S.E. 852 (1915); *Potts v. Blackwell,* 56 N.C. 449 (1857). Plaintiff does not contest the existence of consideration or NCNB's purchaser status.

■ NCNB must also be without notice of any fraud in order to protect its title. Lack of notice is the second element necessary to establish bona fide purchaser status. Either actual or constructive notice of the grantor's fraud is sufficient to deny protected status to a grantee. *See Arrington v. Arrington,* 114 N.C. 151, 19 S.E. 351 (1894). The plaintiff has not alleged that NCNB had actual notice of fraud on the part of its grantor but confines its argument to constructive notice. The basis of plaintiff's constructive notice argument stems from the facts that could be derived from a search of the title records. Given the alleged basis of the notice in this case the Court will apply the definition of notice under recordation law. Under recordation law constructive notice means recordation of a document required to be recorded. *See Dorman v. Goodman,* 213 N.C. 406, 196 S.E. 352 (1938); *Fleming v. Mann,* 23 N.C.App. 418, 209 S.E.2d 366 (1974). "Recordation is the one and only means of giving notice of an instrument affecting title to real estate." *Massachusetts Bonding & Insurance Co. v. Knox,* 220 N.C. 725, 729, 18 S.E.2d 436, 440 (1942).

NCNB, as is the custom, hired an attorney to search the title on the property when the loan was given and upon its renewal. As both defendants Coley and Janis Burton were grantors the attorney searched under both names. The attorney found the property encumbered by utility easements, two deeds of trust, a fixture

---

6. The recordation statutes were enacted in North Carolina after the fraudulent conveyance statutory scheme was established in North Carolina.

7. For purposes of discussion in this section only, the Court will assume that defendants Coley and Janis Burton had the requisite fraudulent intent at the time of obtaining the loan.

**1318**

filing, and county and city property taxes. Affidavit of Brubaker, Exhibit B. The attorney would have discovered a consent judgment docketed against defendant Coley Burton approximately two weeks *after* defendant Coley Burton conveyed the property to defendant Janis Burton. However, this judgment under North Carolina law was not a lien on the property. *Dula v. Parsons*, 243 N.C. 32, 89 S.E.2d 797 (1955). On the deed from defendant Coley Burton was a recitation of $10.00 of consideration passing and five dollars worth of deeds stamps affixed representing at least $5,000 in consideration passing to defendant Coley Burton. The attorney also knew that sometime after the conveyance defendant Coley Burton married defendant Janis Burton. The plaintiff alleges that these facts are sufficient to prevent NCNB from being a bona fide purchaser.

■ North Carolina is a "pure race" jurisdiction. J. Webster, *Real Estate Law in North Carolina* § 331 (1971).[8] As already noted constructive notice means recordation. The purpose of North Carolina's recording statute is to enable intending purchasers and encumbrancers to rely with safety on the public record concerning the status of land titles.[9] *See Chandler v. Cameron*, 229 N.C. 62, 47 S.E.2d 528 (1948). However, the recording statute only protects innocent purchasers for val-

ue. *See Lawing v. Jaynes*, 285 N.C. 418, 206 S.E.2d 162 (1974).

■ Recordation law by necessity limits the search required to gain protected status. "The law contemplates that a purchaser of land will examine each recorded deed and other instrument in his chain of title and charges him with notice of every fact affecting his title which an accurate examination of the title would disclose." *Hensley v. Ramsey*, 283 N.C. 714, 715, 199 S.E.2d 1, 2 (1973). A purchaser is put on notice of any fact or circumstance affecting his title which is reasonably disclosed by the *instruments* in his line of title. *Turner v. Glenn*, 220 N.C. 620, 18 S.E.2d 197 (1942).

■ In this case the record provided neither NCNB nor its agent, the title attorney, with constructive notice of a fraudulent intent on the part of defendant Coley and Janis Burton.[10] The records did not reasonably disclose a fraudulent intent on the part of NCNB's grantors. No lis pendens was filed by the plaintiff. A record of a lis pendens would have put the bank on constructive notice of pending litigation affecting title of the property. N.C.Gen.Stat. § 1–116; *Cutter v. Cutter Realty Co.*, 265 N.C. 664, 144 S.E.2d 882 (1965).[11] Plaintiff would have been protected if a lis pendens was filed.[12] To hold NCNB to have had notice of their grantor's fraudulent intent

**8.** This often stated proposition has been modified by the case of *Hill v. Pinelaw Memorial Park, Inc.*, 304 N.C. 159, 282 S.E.2d 779 (1981) (registration statute does not protect all purchasers who record). *Contra Schuman v. Roger Baker & Associates*, 70 N.C.App. 313, 319 S.E.2d 308 (1984) (no notice however full or formal will supply the want of registration).

**9.** North Carolina's recordation statutes, enacted in 1885, are known as The Cannon Act. *See particularly* N.C.Gen.Stat. §§ 47–18, 47–20.

**10.** NCNB alleges that it is entitled to rely on Attorney's Certificate of Title; underlying this contention is the proposition that the Bank is not held to notice of the facts known by its attorney. This view denies the existence of agency law. In North Carolina an attorney client relationship rests on principles of agency. *See e.g., State v. Barley*, 240 N.C. 253, 81 S.E.2d 772 (1954). Under agency law a principal is

bound by the notice to his agent while the agent is acting within the scope of his authority even though the agent does not in fact inform the principal. *Ward v. Thompson Heights Swimming Club, Inc.*, 27 N.C.App. 218, 219 S.E.2d 73 (1975).

**11.** "The effect of lis pendens and the effect of registration are in their nature the same thing. They are only different examples of instances of the operations of the rule of constructive notice." *Massachusetts Bonding and Ins. Co.*, 220 N.C. at 728, 18 S.E.2d at 439.

**12.** "The *lis pendens* statutes enable a purchaser for a valuable consideration *who has no actual notice* of the pendency of litigation affecting the title to the land to proceed with assurance when the *lis pendens* docket does not disclose a cross-indexed notice disclosing *the pendency* of such an action." *Lawing*, 285 N.C. at 427, 206 S.E.2d at 171.

would require a title attorney to search well beyond the records and enter the realm of speculation.

Claiming protection under North Carolina registration law, NCNB has the burden of proving that it is an innocent purchaser for value, *i.e.* that it "paid valuable consideration and that [it] had no actual notice, or constructive notice by reason of lis pendens ...." *Hill*, 304 N.C. at 163, 282 S.E.2d at 783 (1981). The Court finds NCNB met this burden. The records were insufficient to put NCNB on notice of any fraudulent motivations of its grantor thereby destroying its bona fide purchaser status.[13] The Court, therefore, finds NCNB's deed of trust to be valid and protected from avoidance under fraudulent conveyance law.

### B. JULY 10, 1981 CONVEYANCE

In *Aman,* the North Carolina Supreme Court stated, "If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors ...." *Aman v. Walker*, 165 N.C. at 227, 81 S.E. at 164. "A conveyance is voluntary when it is not for value, *i.e.,* when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud." *Nytco Leasing, Inc. v. Southeastern Motels*, 40 N.C.App. 120, 126, 252 S.E.2d 826, 832 (1979).

It is important to note it is valuable consideration defined as a fair and reasonable price, not mere consideration, which shields a transfer from fraudulent conveyance law. *Smith-Douglas Division of Borden v. Kornegay*, 70 N.C.App. 264, 318 S.E.2d 895 (1984). Under North Carolina fraudulent conveyance law if a party

establishes that a transfer was voluntary and shows the grantor did not retain sufficient assets (insolvency) at the time of the conveyance, the conveyance is void without regard to the grantor's actual intent. *See Michael v. Moore*, 157 N.C. 462, 73 S.E. 104 (1911); *NCNB v. Johnson Furniture*, 34 N.C.App. 134, 237 S.E.2d 313 (1977). Fraudulent intent, in essence, is presumed. *Edwards v. Northwestern Bank*, 39 N.C.App. 261, 269, 250 S.E.2d 651, 659 (1979), *aff'd on other grounds*, 53 N.C.App. 492, 281 S.E.2d 86 (1981).

The initial question arises as to whether defendant Janis Burton paid to defendant Coley Burton a reasonably fair price for the property. The Court finds she did not. Defendants Janis and Coley Burton in their deposition have difficulty pointing to any firm consideration to support the conveyance, much less consideration that is fairly equivalent to the value of the property passing at the time of the conveyance. An argument that the property was conveyed so defendant Janis Burton could look after it is far from the level of a reasonably fair price, since in no way was a conveyance necessary to procure these nebulous services, and the services defendant Janis Burton performed comprised merely depositing rent checks. *See* Deposition of Janis Burton at 7–9.

The issue of fair consideration raises a troubling matter to the Court's attention. In both their depositions neither defendant Janis Burton nor defendant Coley Burton could point to any consideration passing at the conveyance beyond vague intentions to look after the property. The primary rationale for the deed was stated to be the desire that defendant Janis Burton would look after the property and own it if defendant Coley Burton should die.[14] However, on August 21, 1984, these defendants

---

**13.** Summary judgment is appropriate in claims turning on state of mind when plaintiff's allegations are not sufficiently supported to establish the existence of a genuine issue of material fact. 10A C. Wright, A. Miller & M. Kane *Federal Practice & Procedure* § 2730 (1983).

**14.** Consultation with an attorney would have enlightened defendant Coley Burton that a will

is the usual mechanism employed to pass property at death. Defendant Janis Burton was the owner, by virtue of the deed, of the property whether defendant Coley Burton died or not. The Court also believes that a conveyance of one's entire interest in property is a rather drastic approach to engage a person to collect rent.

suddenly remembered a promise from defendant Janis Burton to co-sign a note and execute a deed of trust in consideration for the conveyance, implying this promise was carried out approximately two years later. The alleged purpose of this arrangement was to obtain money to enable defendant Coley Burton to start his own business. Affidavit of Janis W.K. Burton (August 21, 1984); Affidavit of Graydon Coleman Burton (August 21, 1984). In dealing with a similar situation the Fourth Circuit stated:

> 'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' *Perma Research and Development Co. v. Singer,* 410 F.2d 572, 578 (2d Cir.1969). A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the [defendants'] testimony is correct.

*Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984). In their sworn deposition the issue of consideration was explored at length with these defendants and no ample consideration was stated. These affidavits are merely a vain attempt to create an issue of fact by general conclusory statements after discovery had produced nothing as to consideration.[15] *Barwick,* 736 F.2d at 960.

The next matter for review, under the principle promulgated in *Aman,* is whether the defendant retained properties fully sufficient to pay debts then existing; if insufficient the conveyance in question would be invalid as to creditors. *Nytco Leasing, Inc.,* 40 N.C.App. at 126, 252 S.E.2d at 832. If the debtor is solvent after the conveyance the transaction cannot be voided as a fraudulent conveyance. The issue of sol-

vency is often one for the jury. *But see Williams v. Hughes,* 136 N.C. 58, 48 S.E. 518 (1904). However, in this case the evidence is plenary on this issue. *See, e.g., NCNB v. Johnson Furniture,* 34 N.C.App. 134, 237 S.E.2d 313. Defendant Coley Burton, among others, was thought indebted to the plaintiff in the amount of $174,938.22 at the time the complaint was filed by the plaintiff. This amount was lowered to $75,000 when the consent judgment was entered.[16] Plaintiff retained no substantial assets at the time of the conveyance, considerably less than the requirement that sufficient assets be retained. Deposition of Coley Burton at 4–5. The land conveyed was the principal asset, owned by defendant Coley Burton, that a creditor would look to for the payment of a debt. Suffice it to say that no lender would extend credit for the amount of the existing debt with such security as the assets the defendant Coley Burton retained. *See Black v. Sanders,* 46 N.C. 67 (1853). The Court finds defendant Coley Burton did not retain a sufficient amount of assets to avoid the application of fraudulent conveyance law.

■ An alternate ground exists for voiding the July 10th conveyance beyond the general fraudulent conveyance principles established in North Carolina case law and N.C.Gen.Stat. §§ 39–15, 39–17. The present scenario fits within a specific statutory prohibition. N.C.Gen.Stat. § 39–18 states:

> Every contract and settlement of property made by any man and woman in consideration of a marriage between them, for the benefit of such man or woman, or at their issue, whether the same be made *before* or after marriage, shall be void as against creditors of the parties making the same respectively, existing at the time of such contract or settlement if the same is postnuptial.

*Farmer's Bank v. McCullers,* 201 N.C. 440, 160 S.E. 494 (1931).

---

**15.** Although executory promises can serve as consideration it is doubtful that this promise would so serve. Where personal services are asserted to be the consideration between relatives, there arises in North Carolina a rebuttable presumption that the services were gratuitous.

**16.** The figure in the consent judgment was arrived at after further negotiations.

(emphasis added). The North Carolina Supreme Court has said interpreting this policy, "All gifts from a husband to his wife are good *inter se* ... if he is not in debt at the time; but such gifts are voidable as to existing creditors if their rights are not secured...." *Walton v. Parish,* 95 N.C. 259, 263 (1886) (no creditors of husband existing at time of making deed). This holding would also apply to a prenuptial conveyance as clearly stated by the statute. Defendant Coley Burton's transfer of the property, to his wife to be, fits within the statutory prohibition and is void under its provisions.

The Court determines the July 10, 1981 conveyance to be a fraudulent conveyance and therefore invalid as to creditors. As noted, actual intent of the grantor to defraud need not be shown. Whether by the use of N.C.Gen.Stat. §§ 39–15 and 39–17 or § 39–18 plaintiff is entitled to summary judgment, on the issue of the characterization of the July 10, 1981 conveyance, as no genuine issue of material fact remains to be decided on that issue.

■ Plaintiff as a creditor is a party who can attack this conveyance. The agreement is captioned "Continuing Guaranty." Its clear language established Coley Burton as a primary debtor of the plaintiff on the date of the transfer. *NCNB v. Johnson Furniture,* 34 N.C.App. at 136, 237 S.E.2d at 315. "Moreover, a creditor beginning an action prior to the transfer of assets by defendant is entitled to attack the transfer as fraudulent as to him, although he does not obtain judgment against the defendant until after the transfer of the assets has been accomplished." *Nytco Leasing,* 40 N.C.App. at 127, 252 S.E.2d at 833. Under North Carolina law not only was there a fraudulent conveyance in this case but the plaintiff was an eligible creditor to void the conveyance.

## C. ATTORNEY'S FEES FOR DEFENDANT NCNB

NCNB seeks summary judgment on the issue of the validity of its assessment of attorney fees and interest to the outstanding indebtedness of defendants Coley and Janis Burton. NCNB claims its right to do so is based on alleged language in its deed of trust.

■ NCNB, as the party moving for summary judgment, has the burden of demonstrating there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See generally* 10A C. Wright, A. Miller & M. Kane *Federal Practice and Procedure* § 2727 (1983). NCNB has not made a showing sufficient to meet this burden. NCNB has not produced the necessary documentation to support its assessment. Also, NCNB presented no evidence of the amount of attorney fees much less their reasonableness. To allow NCNB a blanket grant to tax attorney fees against the present indebtedness of the defendants Coley and Janis Burton would be improper. If NCNB wishes to pursue this claim it should submit further evidence on this point within thirty (30) days. The defendants Coley and Janis Burton will be given twenty (20) days to respond to any further production by NCNB. This claim will be dismissed if no further showing is made within thirty (30) days.

## III. CONCLUSION

■ A conveyance determined to be fraudulent is void. *Hobbs v. Cashwell,* 152 N.C. 183, 67 S.E. 495 (1910). If an instrument is void it has no legal force. *Black's Law Dictionary* 1411 (5th ed.1979). Through this action plaintiff has been successful in setting aside the conveyance from defendant Coley Burton to his wife defendant Janis Burton. There, however, remains the issue of the priority of the liens of plaintiff and NCNB.[17]

■ The strong policy of registration behind North Carolina's race recordation

---

**17.** Plaintiff's consent judgment becomes an encumbrance on the property as defendant Coley Burton is deemed, by retroactive voidance of the July 10th conveyance, the beneficial owner of the property on the date the judgment was docketed.

statute, and general principles of fairness and equity, persuade the Court to find that NCNB's encumbrance will have priority over the plaintiff's. NCNB was a bona fide purchaser for value who relied on the records before lending money. The money loaned was used to pay existing obligations, improve the property and help the Burtons start a business on the property.[18] Deposition of Coley Burton at 16. NCNB took the necessary steps to perfect its lien by filing its Deed of Trust.

Plaintiff's lien, on the other hand, becomes a valid one only when defendant Coley Burton's transfer, to his fiancee, is voided. To allow this legal magic to resurrect a lien and then to give it priority over a bona fide purchaser for value would undermine the recording statute. The recording statute provides protection to those who rely on what the records reveal. This is accomplished by promoting certainty in what the records reveal, and limiting the scope of the title search. *See Morehead v. Harris,* 262 N.C. 330, 137 S.E.2d 174 (1964) (limiting duty to search to chain of title). The Court finds that against a bona fide purchaser, protected by the recording statute, the plaintiff's judgment lien is junior to that of a bona fide purchaser. *Cf. Page Trust Co. v. American National Bank,* 193 N.C. 528, 137 S.E. 591 (1927) (judgment creditors were entitled to have land subjected to payment of their judgment as against parties purchasing from grantee *with notice*). To allow plaintiff to take the property ahead of NCNB would encourage a judgment creditor to sit back and wait for another to clear his path by paying off encumbrances, or increase the value of the property through improvements.[19]

IT IS, THEREFORE, ORDERED that plaintiff's motion for summary judgment on the validity of the July 10, 1981 conveyance be, and the same hereby is, GRANTED and it is ADJUDGED that plaintiffs judgment lien is junior to the Deed of Trust lien of NCNB.

IT IS FURTHER ORDERED that defendant NCNB's motion for summary judgment on the validity of its Deed of Trust be, and the same hereby is, GRANTED.

IT IS ORDERED that defendant NCNB's motion for summary judgment on the issue of attorney's fees be, and the same hereby is, DENIED. NCNB may submit further evidence on this issue within thirty (30) days from the date of this Order.

---

**18.** "The doctrine of equitable subrogation may be invoked if the obligation of another is paid by [a party] for the purpose of protecting some real or supposed right to interest of his own." *Jamestown Mutual Insurance Co. v. Nationwide Mutual Insurance Co.,* 277 N.C. 216, 220, 176 S.E.2d 751, 755 (1970). "Subrogation is a mode of equitable relief which operates on principles of natural justice without regard to form and independent of any contractual relation between the parties to be affected by it." *Peek v. Wachovia Bank & Trust Co.,* 242 N.C. 1, 86 S.E.2d 745 (1955) (citing Story's *Equity Jurisprudence*). Were it not for the strong policy of registration behind North Carolina's recordation statute the Court would find NCNB equita-

bly subrogated to the rights and position of the creditors whose obligations were paid by defendant NCNB; and also allow NCNB priority as to any amounts lent that went to improve the property. However, this Court's view of North Carolina law requires it to give NCNB priority over the plaintiff for the entire amount of the loan.

**19.** In this case NCNB did both of these activities thus greatly enhancing the property's value to an unpaid creditor. Plaintiff waited over two years from the date of Coley Burton's fraudulent conveyance to Janis Burton before bringing this action.