In re Rickey D. MEDLIN, Cyllene M. Medlin, Debtors.

Randy D. Doub, Plaintiff,

v.

Hartford Fire Insurance Company, Defendant.

Bankruptcy No. 95–03491–8–JRL. Adversary No. L–98–00057–8–AP.

United States Bankruptcy Court, E.D. North Carolina, New Bern Division.

Dec. 17, 1998.

Randy D. Doub, Greenville, NC, for Plaintiff.

L. Franklin Elmore, G. Scott Humphrey, Greenville, SC, for Defendant.

### ORDER

J. RICH LEONARD, Bankruptcy Judge.

This adversary proceeding is before the court on cross-motions for summary judgment. The parties have agreed that these matters are appropriate for decision without a hearing. For the reasons stated below, the defendant's motion is granted and this case is dismissed.

#### I. Statement of Jurisdiction

The chapter 7 trustee filed this action to determine the validity and priority of a lien asserted by Hartford Fire Insurance Company against property of the estate. This is a core proceeding as that term is defined in 28 U.S.C. § 157(b)(2)(F) and (K). Accordingly, this court has the power to enter a final judgment on the trustee's complaint pursuant to 28 U.S.C. § 157(b)(1), § 1334(a), and the general order of reference in this district.

#### II. Standard of Review

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment should not be granted unless the moving party establishes his right to judgment "with such clarity as to leave no room for controversy...." Portis v. Folk Construction Co., 694 F.2d 520, 522 (8th Cir.1982).

#### III. Undisputed Facts

On June 26, 1991, Leader Construction Company ("Leader") and its principals Rick

and Cyllene Medlin (the "Medlins") entered into a General Indemnity Agreement ("GIA") with Hartford Fire Insurance Company ("Hartford").[1] In the GIA, Leader and the Medlins jointly and severally agreed to indemnify Hartford for any loss occasioned by Hartford's issuance of performance bonds in connection with Leader's construction work. In July of 1992, Leader contracted with the County of Buncombe, North Carolina to construct the Buncombe County Detention Center in Asheville, North Carolina. In reliance on the GIA, Hartford issued Performance and Payment Bonds for Leader covering the Buncombe County project and five other government funded construction projects.

In 1993, Hartford received substantial claims on the bonds issued on Leader's behalf and made an unsuccessful demand on Leader and the Medlins for indemnification under the GIA. On October 6, 1993, Hartford filed Civil Action No. 93–104–CV–7–BR in the United States District Court for the Eastern District of North Carolina, seeking two forms of relief from the district court. First, Hartford asked the court for a declaratory judgment determining its obligations under the performance bond issued on the Buncombe County Detention Center. Second, it sought specific performance of the GIA by requiring Leader and the Medlins to pay more than $4,000,000 to Hartford.

On January 21, 1994, the district court issued a temporary restraining order restricting the Medlins' transfer of assets during the pendency of the litigation. In his order, the Honorable W. Earl Britt found that the Medlins had "engaged in a sequence of activities in which they have transferred and encumbered certain of their real property and have refused and resisted the disclosure of assets in their possession or control." (Tab 3 to Stipulations at 3–4.) Judge Britt went on to find that the timing and number of these transactions evidenced "a pattern by Richard D. Medlin and Cyllene M. Medlin to divest themselves of assets and to avoid their obligations under the General Indemnity Agreement." (*Id.* at 4.)

Although Leader and the Medlins had appeared in the district court action, the court entered an order on June 6, 1994 directing that a default judgment be entered against all three defendants on the issue of liability. (Exhibit C to Hartford's Motion for Summary Judgment.) The issue of damages was reserved for later decision.

Concerned that the Medlins were transferring assets, Hartford obtained an Order of Attachment in New Hanover, Onslow, and Pender Counties and, on June 14, 1994, levied on 194.7 acres in Pender County and on two other properties known as the Centura Bank Building and the Plaza Hanover Building. (Exhibit D to Hartford's Motion for Summary Judgment.) On August 8, 1994, Hartford amended its district court complaint, asking the court to set aside certain transfers of real property originally titled in the names of Rick and Cyllene Medlin. The following month, on September 19 and 20, 1994, Hartford filed notices of lis pendens on each parcel of real estate affected by its fraudulent conveyance cause of action, specifically including the 194.7 acres in Pender County, the Centura Bank Building, and the Plaza Hanover Building.

The district court scheduled a hearing on the issue of damages in Hartford's case for July 18, 1995. On July 13, 1995, Cyllene Medlin filed a petition for bankruptcy relief in the Northern District of Georgia, staying the district court action as to her. Accordingly, on July 18, 1995, the district court entered judgment for Hartford in the amount of $8,511,903 against Rick Medlin only. Although this judgment resolved only part of the lawsuit, the district court directed the entry of a final judgment pursuant to Fed. R.Civ.P. 54(b). Hartford docketed this judgment in New Hanover County on August 29, 1995 and in Pender County on September 1, 1995.

On October 2, 1995, Rick Medlin filed a petition in this district seeking relief under chapter 7 of the Bankruptcy Code. Cyllene Medlin filed a bankruptcy petition in this district on November 30, 1995, and the two cases were eventually consolidated for joint

---

1. The parties filed a Stipulation of Facts and Issues on July 28, 1998. The few variances between the parties' stipulation and this recitation of the facts are expressly noted.

administration. On February 1, 1996, Judge Britt withdrew the reference in both cases and lifted all stays relating to Hartford's action against Leader and the Medlins. The district court case then proceeded and, on July 11, 1997, Hartford obtained a judgment against Cyllene Medlin in the amount on $10,026,414.68. This judgment was docketed in New Hanover County on February 19, 1998 and in Pender County on April 15, 1998.

On May 2, 1997, Judge Britt entered an order setting aside Rick and Cyllene Medlins' conveyances of the Plaza Hanover Building and of the Centura Bank Building. These properties were subsequently sold by the bankruptcy trustee who now holds the proceeds from the sales. The Pender County acreage has also been recovered by the trustee and has been, or shortly will be, sold. The net proceeds from these sales is expected to total approximately $650,000. All three of these properties were held by the Medlins as tenants by the entireties.

The trustee filed this complaint on May 13, 1998 asking the court to find that the docketing of the district court judgments in New Hanover County did not cause a judgment lien to attach to property held by the Medlins as tenants by the entireties. On August 4, 1998, the trustee amended his complaint to extend this claim to the Pender County property, and to allege that the $8.5 million judgment against Rick Medlin is an avoidable preferential transfer. The parties have settled the trustee's final claim, agreeing that the judgment lien arising from an April 29, 1994 state court judgment in the amount of $4,723.32 is a preference. (Stipulations, ¶ 4.)

## IV. *Discussion*

These facts give rise to a series of novel legal issues. Hartford contends that the judgments entered by Judge Britt against Rick and Cyllene Medlin in the district court case merged to form a joint judgment that, when docketed, attached as a lien to the debtors' entireties property. The trustee, on the other hand, argues that the two judgments are separate, cannot merge, and do not attach to entireties property. In the alternative, he contends that the judgment against Rick Medlin is an avoidable preference, making it impossible for the two judg-

ments to merge. Hartford counters that this judgment is not avoidable because it relates back to the notices of lis pendens filed in September of 1994 or, in the alternative, because this lawsuit was filed outside the two year period provided by § 546.

### 1. *The Lien Arising from the Judgment Against Rick Medlin is not a Preference.*

■ Hartford's judgment against Rick Medlin was entered within 90 days of the filing of the petition. It is undisputed that Hartford was a creditor of the debtor, that the judgment was entered on account of an antecedent debt, while the debtor was insolvent, and enables Hartford to receive more than would be available for its claim had the judgment not been entered. Thus, on its face, any lien arising from this judgment would appear to be avoidable as a preference under § 547(b), which allows the trustee to avoid "any transfer of an interest of the debtor in property" that meets these requirements.

However, as Hartford points out, it obtained orders of attachment and filed notices of lis pendens well before the 90 day period. Hartford contends that its judgment relates back to these earlier events, making them the transfer or transfers for purposes of § 547(b). Thus, the preference issue turns on whether the transfer to be avoided is considered to be the judgment, the order of attachment, or the notice of lis pendens.

■ Federal law determines what constitutes a transfer and when it is complete. *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945). The starting point for this inquiry is the broad definition of "transfer" provided by the Bankruptcy Code at § 101(54):

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption ....

11 U.S.C. § 101(54). In the absence of any controlling federal law, the concepts of "property" and "interests in property" are determined under state law. *Barnhill v. Johnson, supra.*

Additional guidance on the meaning of "transfer" is found in § 547(e)(2), which provides three alternatives for calculating the date on which a transfer is made, each of which key on the perfection of the transfer. Under this section, a transfer is made:

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, ...;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

Section 547(e)(1) addresses when transfers of property are perfected and, in the case of real property, specifies that perfection occurs when a hypothetical bona fide purchaser could not acquire an interest superior to that of the transferee. 11 U.S.C. § 547(e)(1)(A); *see also Carter v. HCL Leasing Corp. (In re Martin),* 87 B.R. 394 (Bankr.E.D.N.C.1988).

The court has uncovered no decisions addressing whether a notice of lis pendens under North Carolina law is a transfer for purposes of § 547(b). However, courts in two other jurisdictions have directly addressed this question on similar facts. Both of these decisions hold that a judgment entered within 90 days of the petition relates back to a notice of lis pendens, making the lis pendens the transfer to be avoided. In *Hurst Concrete Prods., Inc. v. Lane (In re Lane),* 980 F.2d 601 (9th Cir.1992), the Ninth Circuit found that the recordation of the lis pendens was a transfer of the debtor's interest in property since the lis pendens prevented subsequent purchasers from acquiring superior rights in the property. "It is the fact of attainment of a superior interest, not the creation of a lien or the rendering of a judg-

ment that creates a transfer under the Bankruptcy Code...." *Id.* at 606. The same conclusion was reached by the bankruptcy court in *Matter of Carlson,* 177 B.R. 645 (Bankr. D.Neb.1995).

A third decision arrives at the same conclusion on somewhat different facts. In *Dupwe v. Worthen Nat'l Bank of Batesville (In re Rising Fast Rentals, Inc.),* 162 B.R. 203 (Bankr.E.D.Ark.1993), the trustee sought to avoid a lis pendens filed three days before the petition. The bankruptcy court followed the Ninth Circuit's decision in *Lane,* holding that the lis pendens was a preference "to the extent it perfected or created any additional rights in the subject property...." *Id.* at 204. Because the recording of a lis pendens in Arkansas, as in California, affected "the possession and interests in [the] debtor's property," it was an avoidable preferential transfer.

Although Judge Small's decision in *Carter v. HCL Leasing Corp. (In re Martin), supra,* is not on point, it does support the proposition that a lis pendens is a transfer. In *Martin,* the debtor fraudulently conveyed property two weeks before HCL obtained judgment on April 24, 1987. Approximately four months after the judgment, on August 21, 1987, HCL filed a fraudulent conveyance action and a notice of lis pendens on the property. The property was then voluntarily reconveyed to the debtor on September 4, 1987, and the debtor filed a chapter 7 petition on November 16, 1987. The trustee sued to avoid the judgment lien arising out of HCL's April 24, 1987 judgment. The issue before Judge Small was whether the transfer to be avoided was the April 24 judgment, the August 21 lis pendens, or the September 4 reconveyance.

Judge Small's starting point was the general rule that "with respect to property acquired after a judgment lien is docketed, the lien is created when the property is acquired, not when the judgment is docketed." *Id.* at 397. He then addressed an apparently contrary Middle District decision holding that a judgment entered after a fraudulent conveyance became a lien on the property when docketed, even though the transferee still

held title. *Chrysler Credit Corp. v. Burton,* 599 F.Supp. 1313 (M.D.N.C.1984). Although *Burton* supported the conclusion that the judgment lien "took effect" on April 24, that did not mean that the lien was perfected on that date. "HCL's judgment lien was not perfected prior to the time HCL filed its notice of lis pendens on August 21, 1987. Before the notice of lis pendens was filed, a bona fide purchaser of the property would have had a superior interest in the property to that of HCL." *Id.* at 398. Because the lis pendens was filed within 90 days of the petition, the lien was avoidable.

Yet another line of cases holds that a notice of garnishment is a transfer under the Bankruptcy Code. *See Phillips v. MBank Waco. N.A. (In re Latham),* 823 F.2d 108 (5th Cir.1987); *Wind Power Systems, Inc. v. Cannon Financial Group, Inc. (In re Wind Power Systems, Inc.),* 841 F.2d 288 (9th Cir. 1988); and *Battery One–Stop Ltd. v. Atari Corp. (In re Battery One–Stop Ltd.),* 36 F.3d 493 (6th Cir.1994); *but see Freedom Group, Inc. v. Lapham–Hickey Steel Corp. (In re Freedom Group, Inc.),* 50 F.3d 408 (7th Cir. 1995). Although these cases deal with personalty, not real property, the common denominator once again is the fact that the garnishment binds subsequent creditors and establishes the priority of the garnisher.

■ In North Carolina, as in other states, lis pendens "is a statutory device by which the world is put on notice that an order of attachment has been issued with respect to certain real property owned by a party against whom a monetary judgment is sought." *Edwards v. Brown's Cabinets and Millwork, Inc.,* 63 N.C.App. 524, 528, 305 S.E.2d 765 (1983). Lis pendens is an optional procedure ancillary to the attachment, and the order of attachment is valid even if not noted on the lis pendens docket. The advantage of lis pendens, however, is that it fixes the priority of the lien that arises when the order of attachment is subsequently perfected by judgment and levy. "The date to which the lien relates back ..., with respect

to real property, is the time at which the notice of the order of attachment is docketed in the record of lis pendens in the county where the property is located." *Id.; see also* N.C. Gen.Stat. § 1–440.33(b)(1). Thus, a subsequent bona fide purchaser or lien creditor takes the property subject to a properly recorded notice of lis pendens. *Cf. Cutter v. Cutter Realty Co.,* 265 N.C. 664, 144 S.E.2d 882 (1965).

Here, Hartford's Notices of Lis Pendens were filed nearly eleven months before Rick Medlin filed for bankruptcy. Under North Carolina law, the lis pendens established the priority of Hartford's claim as against subsequent lienors or bona fide purchasers, since any lien obtained by Hartford would relate back to the filing of the lis pendens. In the court's view, these effects make the lis pendens a transfer under the Bankruptcy Code. Because this transfer fixed the date and priority of Hartford's lien, any subsequent transfers including the judgment itself are not preferential since they did not add to Hartford's rights to the property.[2] Accordingly, the lien arising from Hartford's judgment against Rick Medlin is not avoidable as a preference.

### 2. *Hartford Holds a Joint Judgment Against the Medlins*

■ The next issue is whether Hartford holds a joint judgment against Rick and Cyllene Medlin so that its judgment lien will attach to property held by the Medlins as tenants by the entireties. For the reasons stated below, the court agrees with Hartford that its lien extends to the proceeds of entireties property held by the trustee.

The facts of this case are unique. The Medlins, a married couple, jointly and severally agreed to indemnify Hartford under the GIA. Losses occurred, occasioned by the default of the Medlins' corporation, and Hartford filed suit against the Medlins in federal court. In June of 1994, Judge Britt entered a default judgment against the Medlins jointly on the issue of their liability for these losses, reserving only the issue of amount of

---

**2.** If Hartford held only the unavoidable lis pendens on the petition date, it would be free to seek relief from the automatic stay, obtain judgment, and execute upon any resulting lien. Thus, the

rendition of the judgment during the preference period gave Hartford nothing more than the rights it already held.

Hartford's damages. Three days before the hearing on this remaining issue, the lawsuit was partially stayed by Cyllene Medlin's bankruptcy filing. As a result, the judgment for $8,511,903 entered on July 18, 1995 runs against Rick Medlin only. Subsequently, both husband and wife filed bankruptcy petitions in this district. Because of the Medlins' bankruptcy filings, Judge Britt could not enter judgment against Cyllene Medlin until July 11, 1997, at which point damages were assessed in the amount of $10,026,414.68.[3]

The lawsuit before Judge Britt was brought against the Medlins jointly and was based on a joint claim. Clearly anticipating a joint judgment, Hartford attempted to protect its rights by attaching and filing notices of lis pendens against the Medlins' entireties property. Judge Britt found both defendants jointly liable on these claims, and directed the entry of default against them on this issue. If not for the intervening bankruptcy filings, Judge Britt would have assessed damages jointly, and what began and proceeded as a joint lawsuit would have resulted in an unambiguously joint judgment.

Federal Rule of Civil Procedure 54(a) defines a "judgment" as including "a decree and any order from which an appeal lies." Rule 54(b) deals with judgments involving multiple parties, and allows the court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Judge Britt's July 18, 1995 order assessing damages against Rick Medlin tracks this language, stating "[t]he court determines that there is no just reason for delay and, therefore, directs the entry of judgment on this claim." (Exhibit 8 to Stipulations at 2.) As a matter of federal law, this language made the judgment final and appealable. Whether this also makes it impossible for the judgment lien to attach to the defendants' entireties property, is, however, a matter of state law.

In North Carolina, "a lien of judgment effective against only one spouse" does not attach to property held by married persons as tenants by the entireties. *Union Grove Milling & Manufacturing Co. v. Faw,* 103 N.C.App. 166, 168, 404 S.E.2d 508 (1991). This rule "takes its origin from the common law when husband and wife were regarded as one person, and a conveyance to them by name was a conveyance in law to but one person." *Davis v. Bass,* 188 N.C. 200, 203, 124 S.E. 566 (1924). Because neither husband or wife own a divisible part of the property, a judgment entered against either spouse individually or separately cannot be satisfied from entireties property. *See, e.g., Duplin County v. Jones,* 267 N.C. 68, 147 S.E.2d 603 (1966); *Edwards v. Arnold,* 250 N.C. 500, 109 S.E.2d 205 (1959); *Southern Distributing Co. v. Carraway,* 189 N.C. 420, 127 S.E. 427 (1925).

Very few decisions have turned on whether a judgment against spouses has been entered jointly or individually. In general, the analysis by these courts looks to the structure of the judgment or judgments, as well as to whether the husband and wife are both accountable for the underlying obligation. For example, the Seventh Circuit, applying Arizona law, has confirmed the sensible rule that spouses sued sequentially in separate lawsuits have not been sued jointly, even if sued on the same claim. *Northwestern Nat'l Ins. Co. v. Schubach,* 93 F.3d 386 (7th Cir. 1996).

Closer to home, the North Carolina Supreme Court has held that a joint consent judgment entered against a husband and wife individually on account of the wife's business did not attach to entireties property. *Southern Distrib. Co. v. Carraway, supra.* The judgment in *Carraway* was entered against "Emma R. Carraway and Willie G. Carraway, trading as East Carolina Supply Company, and Emma R. Carraway, Henry T. Carraway, and Willie G.

---

**3.** For reasons not made clear by the present record, the amount of damages assessed against the two defendants differs by approximately $1.5 million. Obviously, this anomaly is caused in part by the accretion of two years additional interest. And since the claims against the two defendants were identical, this court presumes the coterminance of the amounts of liability assessed.

Carraway individually." Emma and Willie Carraway operated the business partnership that incurred the liability, and Henry Carraway, Willie's husband, was only secondarily liable on this debt. In light of this, and because the judgment was entered by consent, the court concluded that "[i]t was no doubt the purpose of the defendants to exclude the property, held by them as tenants by the entirety, from execution under this judgment."

The most relevant case uncovered by the parties and the court is *Maryland v. Friedman*, 283 Md. 701, 393 A.2d 1356 (1978). In *Friedman*, the State sought damages from a husband and wife based upon the husband's embezzlement of funds. In conjunction with a writ of attachment, the sheriff levied on the defendants' residence, owned by them as tenants by the entireties. The property was later sold under threat of foreclosure, and the net proceeds were paid into the court's registry. As part of a subsequent plea bargain agreement, the husband confessed judgment in the civil action, leaving the claims against his wife unresolved. The trial court then proceeded to fix the priorities among the competing claimants to the funds held in the court's registry, including two creditors claiming liens superior to the State's attachment lien. The issue before the appellate court was whether this action was premature.

Like the present case, *Friedman* turned on the legal principles relating to attachments and entireties property. Under Maryland law, the attachment gave the State an inchoate lien that bound the attached property until the underlying action was resolved, and took priority over any liens arising after the date of levy. Because the State's claim against the wife remained unresolved, it was impossible to determine the effectiveness of the State's lien, and the trial court had acted improvidently in doing so. In reaching this holding, the appellate court was untroubled by the fact that the judgments against husband and wife would be entered separately. Because there is no requirement in this context that the judgments be perfected against the husband and wife at the same instant, it is plain that if the State has

success in obtaining a monetary judgment against Mrs. Friedman in addition to the one it has against her husband, and each arises from a joint act of the husband and wife, the two would unite to form a joint judgment so as to create an effective lien as of the date the original levy was made. 283 Md. 701, 708, 393 A.2d 1356.

The *Friedman* decision is not binding on this court and is not directly on point. There is no indication that the judgment against Friedman had the patina of finality that Rule 54(b) gives to the 1995 judgment against Rick Medlin. Furthermore, the separation of the judgments against husband and wife was not the central issue before the Maryland Court of Appeals. Nevertheless, the court's analysis of that issue is not dictum, since the existence of a separate judgment against the husband would substantiate the trial court's action by nullifying the State's lien against entireties property. And the result reached in *Friedman* is consistent with the policies supporting underlying attachment and the protective limits of entireties property.

In the absence of a controlling statement from the North Carolina courts, this court agrees with *Friedman* that a judgment against one spouse merges with a judgment later entered against the other, when the judgments are entered in the same lawsuit and on identical claims. A contrary holding would allow married couples to unfairly shield entireties property by manipulating the structure of the judgments against them. This conclusion also comports with the facts of this case, where the action was prosecuted jointly and a joint judgment by default was entered on the issue of liability. It would be manifestly unfair to penalize Hartford for a separation of judgments caused solely by the imposition of the automatic stay.

Under North Carolina law, Hartford's judgment lien against the Medlins' property relates back to the filing of the notices of lis pendens and takes priority over all subsequent liens. Because the lien relates back to a point beyond the 90 day preference period, it cannot be avoided by the trustee under § 547(b). Finally, under North Carolina law, Hartford's lien continues in the proceeds

generated by the sale of the attached property. *In re Foreclosure of Deed of Trust*, 303 N.C. 514, 279 S.E.2d 566 (1981).

### V. *Conclusion*

Based on the foregoing, the judgment lien arising from the April 29, 1994 state court judgment against the debtors in the amount of $4,723,32 is avoided under 11 U.S.C. § 547(b) as a preferential transfer. With this exception, the defendant's motion for summary judgment is granted and this case is dismissed.

So Ordered.